501 F.2d 1125
 NATIONAL AMERICAN INSURANCE COMPANY, a Nebraska corporation, Appellee,
v.
JAMISON AGENCY, INC., Gerald Bollinger, Appellee; Capital
Systems Corporation, Appellant.
NATIONAL AMERICAN INSURANCE COMPANY, a Nebraska corporation,
Third Party Appellee,
v.
JAMISON AGENCY, INC., and Gerald Bollinger, Third Party Appellees.
CAPITAL SYSTEMS CORPORATION, Third Party Appellant,
v.
A.J.R., INC., formerly Pinkerton Madden Burford, Inc., Third
Party Appellee.
 No. 74-1178.
 United States Court of Appeals, Eighth Circuit.
 Submitted June 13, 1974.
Decided July 30, 1974.
 
 George J. Danforth, Jr., Sioux Falls, S.D., for Capital Systems Corp.
 William E. Gast, Omaha, Neb., for A.J.R.
 Joseph H. Barnett, Aberdeen, S.D., for Jamison.
 William J. Brennan, Jr., Omaha, Neb., for Natl. American Ins. Co.
 Before LAY, HEANEY and ROSS, Circuit Judges.
 ROSS, Circuit Judge.
 
 
 1
 On October 13, 1971, certain real property in Woonsocket, South Dakota, owned by Capital Systems Corporation (Capital Systems) was damaged by fire. A dispute developed as to whether or not a fire insurance policy issued by National American Insurance Company (National American) was in force at the time of the loss; and National American, basing jurisdiction on diversityb of citizenship, brought a declaratory judgment action in the federal district court seeking a declaration that the policy was not in force. In the alternative, National American sought a declaration against Jamison Agency, Inc., and Gerald Bollinger, that agency's president, (Jamison/Bollinger) to the effect that they were responsible for any award adjudicated against National American. Capital Systems counterclaimed against the insurance company, cross-claimed against Jamison/Bollinger and brought a third party complaint against A.J.R., Inc., formerly Pinkerton Madden Burford, Inc., an Omaha, Nebraska, insurance agency.
 
 
 2
 The dispute was submitted tothe court on stipulated facts; and the court held that the insurance policy was not in force at the time of the fire. It further held that Capital Systems could not recover on its cross-claim and third party complaint against the insurance agents. Since no award was adjudicated against National American, the court did not deal with National American's claim against Jamison/Bollinger. Capital Systems appealed to this Court.
 
 
 3
 We conclude that it was error to hold that the insurance policy was not in force. We reverse the decision of the district court in that regard and remand the case so that the court can adjudicate the claim made by National American against Jamison/Bollinger.
 
 
 4
 The facts pertinent to our decision are as follows: On March 13, 1969, National American, a Nebraska corporation, issued the subject fire insurance policy to L. J. Van Dyke and Van Dyke La Arc, Inc., of Woonsocket, South Dakota, a company which made structural components for buildings and other products out of wood. The policy, which covered certain structures belonging to the company, was to be in effect for a three-year period, and the premium was to be paid in three annual installments due on March 13 of each year. Van Dyke paid the first annual installment immediately. The policy contained the standard provision that no assignment of it would be valid without the consent of the insurance company.
 
 
 5
 Jamison Agency, Inc., of Woonsocket, whose president and controlling shareholder was Gerald Bollinger, was the agency through which Van Dyke purchased the policy. Jamison/Bollinger brokered the policy through the Sioux Agency of Sioux Falls, South Dakota.
 
 
 6
 In early May, 1969, Capital Systems, which was an Illinois corporation, purchased all the stock of Van Dyke La Arc, Inc., from L. J. Van Dyke and his wife. The insurance policy was thereupon amended so that the named insured was simply Van Dyke La Arc, Inc. Mr. Jack Moores, president of Capital Systems, became president of Van Dyke La Arc, Inc., and moved to South Dakota to take over management of the company, which was Capital Systems' only asset.
 
 
 7
 Capital Systems, the new sole shareholder of Van Dyke La Arc, Inc., wanted to increase the amount of insurance on the premises in Woonsocket; and, starting in June, 1969, switched Van Dyke La Arc's insurance business from Jamison Agency to Pinkerton Madden Burford, Inc., of Omaha, whose successor, A.J.R., Inc., is a third party defendant in this litigation.
 
 
 8
 In December, 1969, Van Dyke La Arc, Inc., was legally dissolved under the provisions of the South Dakota Business Corporations Act. All the assets of Van Dyke La Arc, Inc., were distributed to its sole shareholder, Capital Systems. Among these assets was the National American insurance policy. Neither the agencies involved nor National American were informed of, and they had no independent knowledge of, this dissolution and assignment of assets. National American never, therefore, consented to the assignment of the policy from Van Dyke La Arc, Inc., to its sole shareholder, Capital Systems.
 
 
 9
 The March 13, 1970, due date for the annual installment payment on the policy passed without any bill being sent by National American, Sioux Agency or Jamison Agency. On July 16, 1970, Jamison Agency did receive a bill from Sioux Agency, which supposedly represented the installment amount due. Jamison Agency, without notifying anyone at the Van Dyke La Arc plant, replied the next day to this bill, telling Sioux Agency that it had 'noticed this for cancellation last October.' Sioux Agency then sent a lost policy cancellation release form to Jamison Agency, telling Jamison to secure the signature of Van Dyke La Arc, Inc., for purposes of cancelling the policy.
 
 
 10
 Without consulting Van Dyke La Arc, Bollinger's secretary signed 'Van Dyke La Arc Co., Inc.' to that portion of the release form calling for the insured's signature. She signed 'Jamison Agency, Inc.' where the agent's signature was required. The release was then returned to Sioux Agency, which forwarded it to National American. The company thereupon cancelled the policy on its books. It is clear that no one in the Van Dyke La Arc operation of Capital Systems had authorized Jamison Agency to cancel the National American policy.
 
 
 11
 On October 13, 1971, fire destroyed much of the insured premises, and a claim in the amount of $35,000 was made under the disputed policy. This litigation followed in due course.
 
 I.
 
 12
 The district court based its decision that the policy was not in force on the fact that National American had never been informed nor consented to the assignment of the policy from Van Dyke La Arc, Inc., to its sole shareholder, Capital Systems. We disagree with this conclusion by the district court and do not believe that this policy provision is applicable to the facts of this case.
 
 We recognize that as a general rule:
 
 13
 (A) provision in a fire insurance policy making the policy void if assigned without the consent of the insurer, evidenced in the manner stipulated in the policy, is a reasonable one and binding on the insured.
 
 
 14
 If the insurer's consent is essential to the validity of an assignment, an assignee acquires no right in the absence of such consent.
 
 
 15
 16 Couch on Insurance 2d 63:159 (1966). See, e.g., Davis v. Oregon Mutual Insurance Co., 71 Wash.2d 579, 429 P.2d 886, 887 (1967); McHugh v. Manhattan Fire & Marine Insurance Co., 363 Mich. 324, 109 N.W.2d 842, 844 (1961). Even without a provision in the policy 'policies of fire insurance are considered personal contracts and are not assignable before loss without the consent of the insurer.' 16 Couch on Insurance 2d 63:155 (1966). See, e.g., Central Union Bank v. New York Underwriters' Insurance Co., 52 F.2d 823, 824 (4th Cir. 1931); Stephenson v. Germania Fire Insurance Co., 100 Neb. 456, 160 N.W. 962, 963 (1916).
 
 
 16
 However, we are not persuaded that these general rules should be applied indiscriminately in factual settings such as the one at hand, in which they work an unexpected forfeiture of insurance coverage, and when the assignment involves no increase in risk to the insurer.
 
 
 17
 The object of policy provisions and legal rules which require consent of the insurer to any assignment of a fire insurance policy is 'to prevent an increase of risk and hazard of loss by change of ownership without the knowledge of the insurer.' 16 Couch on Insurance 2d 63:31 (1966). In this case that rationale is totally inapposite. The assignment of the policy to Capital Systems did not increase the risk and hazard of loss, since Capital Systems did not, in reality, obtain any additional interest in the policy and insured premises above what it already had as sole shareholder in Van Dyke La Arc, Inc. Had there been no dissolution and therefore no assignment, Capital Systems, as sole shareholder of Van Dyke La Arc, would still have controlled the proceeds from the insurance policy paid to Van Dyke La Arc, Inc. As a practical matter, whatever increase in risk there was occurred when the ownership of the stock, together with control of the corporation changed hands, and no allegation is made that this event required the consent of National American. In short, there was no more risk and hazard of loss after the dissolution and assignment than there was before Van Dyke La Arc, Inc., was dissolved.
 
 
 18
 Once it is seen that there is no reason to apply the rule in the instant case it becomes clear that to do so would place form over substance and would conflict with the oft-expressed doctrine that forfeitures of insurance policies are not favored in the law and are to be avoided whenever possible. See, e.g., Von Uhl v. Trempealeau County Mutual Insurance Co., 33 Wis.2d 32, 146 N.W.2d 516, 520 (1966); Beister v. John Hancock Mutual Life Insurance Co., 356 F.2d 634, 642 (8th Cir. 1966); Christensen v. Royal Insurance Co., 65 S.D. 246, 272 N.W. 820, 822 (1937). Directly on point, the California Supreme Court has said that 'forfeitures on technical grounds which bear no substantial relationship to an insurer's risk are disfavored . . ..' California Compensation and Fire Co. v. Industrial Accident Commission, 62 Cal.2d 532, 42 Cal.Rptr. 845, 847, 399 P.2d 381, 383 (1965).
 
 
 19
 In several situations analogous to this one courts have recognized exceptions to the general rule calling for consent of the insurer to an assignment and have refused to enforce policy provisions requiring that consent. These exceptions reflect the feeling of the courts that this policy provision should not be used to defeat insurance coverage when the assignment in question works no real change in the ownership of the policy and the insured property and, therefore, has no effect on the risk and hazard of loss.
 
 
 20
 One such exception to the rule occurs when one partner in a business assigns his interest in an insurance policy on that business to the other partners. Strahorn v. Kansas City Fire & Marine Insurance Co., 241 Iowa 991, 42 N.W.2d 903, 905 (1950); Burleson v. Blankenship, 193 Wash. 547, 76 P.2d 614, 615 (1938); German Mutual Fire Insurance Co. v. Fox, 4 Neb.Unof. 833, 96 N.W. 652, 653-654 (1903); West v. Citizens' Insurance Co., 27 Ohio St. 1, 22 Am.R. 294, 300 (1875).
 
 
 21
 The leading case of Strahorn v. Kansas City Fire & Marine Insurance Co., supra, demonstrates the reasoning behind this exception and lends support to the conclusion that the policy provision involved herein should not be enforced against Capital Systems. In Strahorn a collision insurance policy was issued to two partners doing business as an automobile dealership. One partner bought out the other and took an assignment of all of the latter's interest in the business, including the insurance policy. The Iowa Supreme Court concluded that this assignment between partners did not fall within a prohibition against assignment without consent of the insurer. The court reasoned, quite simply, that such a transfer or sale did not increase the risk. In quoting from West v. Citizens' Insurance Co., supra, the court noted that 'no stranger was introduced; no one but those with whom the contract was made was left in control.' Strahorn v. Kansas City Fire & Marine Insurance Co., supra, 42 N.W.2d at 905.
 
 
 22
 This, of course, reflects the situation present in the instant case viewed in a realistic manner. Capital Systems was no stranger suddenly acquiring an interest in the policy or property it had not previously had. As sole shareholder in Van Dyke La Arc, Inc., it had as much interest in the insurance policy and the premises before the dissolution and assignment as after it. And, while the insurance contract was nominally made with Van Dyke La Arc, Inc., Capital Systems was actually in control both before and after the assignment. The reasoning behind the exception for assignments between partners is equally applicable here.
 
 
 23
 Another exception to the rule is made when the property and policy have been transferred by operation of law. Loomis v. Vernon Mutual Fire Insurance Co., 14 Wis.2d 470, 111 N.W.2d 443, 445 (1961); Gulf Insurance Co. v. Thieman, 356 P.2d 360, 361-362 (Okl.1960).
 
 
 24
 In Gulf Insurance Co. v. Thieman, supra, the Oklahoma Supreme Court held that transfer of title to property from a bankrupt to a trustee under the Bankruptcy Act did not constitute an 'assignment' within the meaning of a policy provision invalidating the policy if there was an assignment without the insurer's consent. The court pointed out that 'the bankruptcy of an insured is a special situation governed by special laws. When it occurs, the principles which would otherwise govern liability on an insurance policy may not always apply . . ..' Gulf Insurance Co. v. Thieman, supra, 356 P.2d at 362-363. The court had earlier noted that 'the assignment which occurs by operation of law under the Bankruptcy Act . . . affects the title, not only of the insurance policy, but also of the property insured, if it is non-exempt.' Id. at 362. The trial court, whose decision was affirmed in the Gulf Insurance Co. case, had found that the transfer of the property to the trustee in bankruptcy involved 'no increase in * * * moral hazard * * *'. Id. at 361.
 
 
 25
 In Loomis v. Vernon Mutual Fire Insurance Co., supra, the insured obtained a three-year fire policy in 1954. He died intestate later that year, and the insured property passed to his heirs, although the final probate decree was not filed until 1955. In 1956 the property was destroyed by fire. The court held that the heirs could recover on the insurance policy even though the insurer argued that the transfer of the property under the probate decree was an assignment which was prohibited by the policy unless consented to by it, that the property had passed to the heirs by operation of law upon the death of the insured, and that this was an exception to the standard provision that the insurer must consent if an assignment of a policy is to be valid. Loomis v. Vernon Mutual Fire Insurance Co., supra, 111 N.W.2d at 445.
 
 
 26
 While it does not apply directly to this case,[1] the existence of this exception for transfers by operation of law points once again to the fact that courts will not slavishly follow the rule against assignments without consent when the reason for that rule does not exist in the particular situation.
 
 
 27
 For the foregoing reasons we conclude that it was erroneous to hold that the National American insurance policy was not in force because there had been no consent to the assignment of that policy to Capital Systems.
 
 II.
 
 28
 In the trial court National American claimed, in addition to its assertion that the assignment precluded coverage, that the actions of the Jamison Agency's secretary in signing the lost policy cancellation release for Van Dyke La Arc effectively cancelled the policy. This claim is obviously without merit.
 
 
 29
 The general rule is that where a broker has authority to procure an insurance policy, once that policy has been obtained his authority ends; and he does not have authority to cancel that policy absent some actual or apparent additional authority being granted by the insured. Holbrook v. Institutional Insurance Co. of America, 369 F.2d 236, 239 (7th Cir. 1966); Dupeck v. Union Insurance Co. of America, 329 F.2d 548, 557 (8th Cir. 1964); Smith v. Firemen's Insurance Co., 104 F.2d 546, 547-548 (7th Cir. 1939); Spann v. Commercial Standard Insurance Co., 82 F.2d 593, 597 (8th Cir. 1936); 3 Couch on Insurance 2d 25:16 (1960).
 
 
 30
 Additionally, The authority of an agent authorized by the insured to procure a contract of insurance is special and not general. Persons dealing with the agent are bound to ascertain the scope of the agent's authority, and if they do not, they deal with him at their peril.
 
 
 31
 3 Couch on Insurance 2d 25:13 (1960).
 
 
 32
 In the instant case there is no evidence that Van Dyke La Arc or Capital Systems ever expressly authorized Jamison Agency or Bollinger to cancel the policy in question. That agency had no apparent authority to do so either. Certainly the fact that the Jamison Agency secretary, without authority from Van Dyke La Arc, signed for it on the lost policy cancellation release should not be binding on Capital Systems. In short, it is clear that the Jamison Agency was acting beyond the scope of its authority in cancelling the policy. As such, it was not acting as the agent of Capital Systems, and the cancellation is not effective as to it.
 
 
 33
 We express no opinion regarding National American's claim against Jamison/Bollinger.
 
 
 34
 The judgment of the district court is reversed and the cause is remanded to permit that court to adjudicate National American's claim against Jamison Agency and Gerald Bollinger.
 
 
 
 [1]
 It might be argued that the assignment in this case was 'by operation of law.' S.D. Compiled Laws Ann. 47-7-13 (1967) provides that a corporation which is being dissolved 'shall . . . after paying or adequately providing for the payment of all of its obligations, distribute the remainder of its assets, either in cash or in kind, among its shareholders according to their respective rights and interests.'
 However, we do not base our opinion on the fact that a statute directs distribution of assets, since, obviously, in many situations an assignment of an insurance policy could occur under this law which would substantially affect the risk and hazard of loss. It is the nature of the transfer in this particular case which controls this decision, not the mere fact that the transfer may have been accomplished in a manner directed by state law.