Cratsley, J.
The parties have filed cross motions for summary judgment on the issue of whether the insurers, Cigna P&C (Cigna), Commercial Union Insurance Company (CU) and CNA Insurance Companies (CNA) had an initial duty to defend against claims brought by the United States Environmental Protection Agency (EPA) against Waste Management of North America, Inc. (WMNA) and Waste Management of New Hampshire (WMNH) for hazardous waste transported and released at the Auburn Road Landfill by Sanitas/NH, the predecessor to WMNH. The insurers have challenged claims of WMNA and WMNH for defense, and the insurers have themselves moved for summary judgment asserting that there is no occurrence, that the pollution exclusion applies, and that WMNA is not a named insured or an entity otherwise covered by the policies. The insurers have also moved for summary judgment on the issue of their duty to indemnify WMNA and WMNH in the EPA action. WMNA and WMNH have opposed that motion.
BACKGROUND
I. CORPORATE HISTORY.
Plaintiffs WMNA and WMNH claim to have succeeded to the rights of the named insureds under insurance policies issued by the defendants Cigna, P&C, CNA, and Commercial Union Insurance Company to Sanitas Service Corporation. The history of the corporation indicates that WMNA is not a true successor to the insured entity, Sanitas Service Corporation or to the parent corporation, Sanitas Waste Control Corporation.
In March 1971 Sanitas Waste Control Corporation formed Sanitas Waste Disposal of New Hampshire (SWDNH) in order to merge with a pre-existing waste hauler, Truk-Away Corporation. Truk-Away was a New Hampshire Corporation formed in 1959. Its owner and president was Roy Stewart. At the merger of Truk-Away and SWDNH Stewart became president and chairman of the board of directors of SWDNH. Stewart remained president of SWDNH until 1972, and he was chairman of the board of directors until June 30, 1974. Thereafter, Stewart remained a stockholder in SWDNH. In 1976 Stewart was awarded Truk-Away in a settlement of a lawsuit between Stewart and Sanitas. From 1976 to 1984 Stewart operated Truk-Away as an independent waste hauling company. Depo. of Roy Stewart, attached to Affidavit of Jeremy Sternberg at Ex. F., pp. 28-29.
On May 2, 1980 SCA Services, Inc. (SCAS) purchased all of the stock of SWDNH under an agreement with its parent company, Sanitas Waste Control Corporation. Sanitas Waste Control Corporation remained in existence. On May 20, 1980, the name of the acquired corporation was changed from SWDNH to SCA Services of New Hampshire (SCANH).
In 1984 Waste Management, Inc. (WMI) and Waste Management Acquiring Corporation (WMNAC) entered into an agreement with Genstar Corporation and its *50 subsidiary Genstar Refuse Services Corporation that WMNAC would purchase all the stock of SCA Services Corporation and would merge SCA into WMAC as a wholly-owned subsidiary. Soon after the merger WMAC would distribute certain businesses and operations of SCA Services to WMI and to Genstar. The WMI/WMAC agreement with Genstar/Genstar Refuse Services provoked an antitrust complaint which was settled by the parties’ consent to entry of final judgment. Pursuant to its consent to entry of final judgment, WMI divested itself of some of the assets of SCA Services. However, it retained SCANH. On July 11, 1986 SCANH became Waste Management of New Hampshire (WMNH). WMNH is a successor to SWDNH and SCANH, but SCAS and WMNA, the corporations which became parents to the SWDNH entity, are not successors to Sanitas Service Corporation, the entity to whom the defendant insurers extended coverage.
II. THE INSURERS AND THEIR POLICIES.
From January 1, 1973 until March 1, 1974, when the policy was canceled, Commercial Union provided Comprehensive General Liability (CGL) insurance to Sanitas Service Corporation and its subsidiaries, including SWDNH, under Policy No. CC-9206-002. Neither the plaintiffs nor Commercial Union has so far located a copy of this policy. Affidavit of Thomas Jennings (Jennings Aff.), par. 21. Commercial Union has offered its underwriting file on the policy, which contains a “daily report,” an “endorsement #1,” and a standard form policy to establish the basic terms of the policy, the type of policy, the limit of liability, and that Sanitas and SWDNH were named insureds. Affidavit of Ellen Martin filed in support of Commercial Union’s Motion for Partial Summary Judgment, dated July 18, 1990, denied May 3, 1991, (Martin Aff.) pars. 1-4, 7 and Ex. B.
From March 1, 1974 until the policy was canceled on July 1, 1975, Cigna P&C provided coverage to Sanitas Service Corporation under Policy No. CG 273530. SWDNH was added as a named insured by endorsement.
WMNA and WMNH have alleged that Cigna issued a second policy, No. UL 843242, for the term July 1, 1974 to July 1, 1975. Neither plaintiffs nor Cigna have been able to find a copy of this policy. Plaintiffs discovered in the SWDNH files a Certificate of Insurance identifying policy UL 843242 and indicating that it provided coverage for all subsidiaries of Sanitas Service Corporation. Plaintiffs’ Responses to the First Set of Interrogatories of Cigna P&C, Ans. 17, attached to Affidavit of Rosemary B. Boiler as Ex. 9. According to Cigna, the number identifies the policy as an excess insurance policy which does not provide defense. Letter from Cigna P&C to WMNA and WMNH, dated September 28, 1988, Boiler Aff, Ex. 11.
CNA issued Comprehensive General Liability (CGL) coverage to Sanitas in Policy No. CCP 2436103, covering the periods July 1, 1975 to July 1, 1978 and In Policy No. CCP 190-1759 for the period January 1, 1978 to January 1, 1981. Policy No. CCP 2436103 is discussed below in Section II. C. of this opinion.
Policy No. CCP 190-1759 issued by CNA Transportation for the period January 1, 1978 to January 1, 1981 afforded CGL coverage to “Sanitas Service Corporation and its subsidiaries, and subsidiaries thereof, now or subsequently owned.” Endorsement 1 attached to MacBryde Aff. as Ex. E. MacBryde’s affidavit asserts that this is a “true and correct copy" of the policy; therefore, there is no need to look to standard forms in order to ascertain its terms and provisions. MacBryde Aff., par. 12. This policy contains the pollution exclusion and it does not contain any endorsement deleting the pollution exclusion for entities and operations in New Hampshire.
III. THE EPA CLAIMS AGAINST WMNA AND WMNH.
Before the EPA made any claim against WMNA or WMNH there was nearly a decade of investigation of pollution at the Auburn Road Landfill during which time various parties were notified of the conditions at the site. In August 1979, following the New Hampshire investigation which uncovered hazardous industrial waste at four areas of the landfill, it was closed to further industrial wastes. As early as August 1979 WMNH’s predecessor SCANH was aware of the hazardous wastes at the site. Plaintiffs Responses to the First Set of Interrogatories of Liberty Mutual Ins. Co., Ans. 16(c) attached to the Affidavit of Rosemary B. Boiler as Ex. 17.
On October 3, 1979 the New Hampshire Department of Health and Welfare sent notices to Roy Stewart of Truk-Away Service, the Town of Londonderry, Peter Johnson, Derry Sand & Gravel Co., and Joe Eiras, SCA Services, Inc. that permit provisions prohibiting dumping or receiving hazardous wastes at the Auburn Road Landfill had been violated. Boiler Aff., Exs. 18-21. The Auburn Road Landfill was closed in January 1980.
On September 8, 1983, following a two-year engineering study of the contamination, the Auburn Road Landfill was listed on the National Priority List, pursuant to §105 of the Comprehensive Environmental Response and Liability Act of 1980, 42 U.S.C. 9605. Boiler Aff. Ex. 13 at 12 and Ex. 26.
The first communication between EPA and any Waste Management entity was the April 1986 request for information sent to SWDNH c/o WMNH. However, the communication which constitutes the equivalent of a “suit for damages on account of property damages” under the standards set down by our Supreme Judicial Court in Hazen Paper is the November 1988 PRP letter, which the EPA addressed only to WMNA. Letter of Martin S. Hohman, Director of Waste Management Division, U.S. Environmental Protection Agency, to Waste Management of No. America, dated November 25, 1988, p. 2, Affidavit of Thomas Jennings, Ex. A *51 (PRP Letter); Hazen Paper Co. v. U.S. Fidelity & Guaranty Co., 407 Mass. 689, 692 and 695 (1990). On August 14, 1990 the EPA sent a letter explaining that its November 1988 PRP letter and April 1990 special notice, which were addressed only to WMNA, were intended to include WMNH, Affidavit of Thomas J. Jennings, par. 11 and Ex. C.
The Administrative Order of August 31, 1990 was addressed only to WMNH. In the Findings of Fact the Regional Administrator of Region I found WMNH to be a successor to SWDNH and its predecessors, and she listed the various hazardous chemicals which those predecessors had transported to the site and had dumped in the landfill. The Administrative Order orders WMNH to remedy contamination of soil, groundwater, surface water, and air on and off the site. Jennings Aff. par. 12 and Ex. D.
DISCUSSION
Summary judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Corrections, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that it is entitled to summary judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). With respect to any claim on which the party moving for summary judgment does not have the burden of proof at trial, the party can demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). If the moving party demonstrates that there is no triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion. Pederson, supra at 17.
I. PRIMARY INSURERS’ DUTY TO DEFEND WMNA.
The insurers allege that they have no duty to defend WMNA because it is not a named insured under the policies which they provided to Sanitas Service Corporation and to the subsidiaries of Sanitas. ‘The initial duty of the liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the third-party complaint are ‘reasonably susceptible’ of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense." Liberty Mutual Ins. Co. v. SCA Services, Inc., 412 Mass. 330, 331-32 (1992), citing Continental Casualty Co. v. Gilbane Bldg. Co., 391 Mass. 143, 146-47 (1984), quoting Sterilite Corp. v. Continental Casualty Co., 17 Mass.App.Ct. 316, 318 (1983) rev. denied 391 Mass. 1102 (1984).
WMNA claims that the insurance policies covering Sanitas and SWDNH should be transferred to WMNA and WMNH by operation of merger statutes. In cases where the acquired company has lost its separate corporate identity, and has been merged into the acquiring company according to the terms of a state’s merger statute, courts have held that the rights under the insurance policy of the merged company are deemed to have been transferred and vested in the surviving corporation, even if the policy contained a no-assignment clause. Imperial Enterprises, Inc. v. Fireman’s Fund Ins., 535 F.2d 287, 291 (1976); National American Ins. Co. v. Jamison Agency Inc., 501 F.2d 1125, 1128-29 (1974). Courts have justified overriding the no-assignment clause of the policy because such a transfer does not increase the risk to the insurer when the coverage transferred is limited to pre-acquisition occurrences. Id.
Two factors distinguish this case from the cases just discussed. First, while WMNH is a successor to SWDNH and SCANH, SCAS and WMNA, the corporations which purchased and became parents to SWDNH/SCANH, are not successors to Sanitas Service Corporation, the entity to whom the defendant insurers extended coverage, or to Sanitas Waste Control Corporation, the entity which sold SWDNH to SCA Services Corporation. Only SWDNH was sold in the 1980 transaction between Sanitas Waste Control Corporation and SCA Services Corporation. Because neither Sanitas Services Corporation nor Sanitas Waste Control Corporation was absorbed by SCA, SCA did not succeed to the coverage extended to Sanitas Service Corporation. When SCA was merged into Waste Management, it did not bring to Waste Management the insurance rights of Sanitas Service Corporation.
Second, the transfer of SWDNH to SCA was accomplished through stock purchase, not by statutory merger. In 1984 Waste Management, Inc. (now WMNA) also acquired SCA by stock purchase, not by statutory merger. SCANH/SWDNH retained its separate corporate identity after the purchase. When acquisition is accomplished by stock purchase, all legal attributes of the acquired entity continue. Leases, contracts, and licenses remain with the acquired entity, although a particular contract may provide for termination with the change of control. Simon Lome, Acquisitions and Mergers Negotiated and Contested Transactions §2.02(3] (1985). For these reasons WMNA is not entitled to a transfer of SWDNH/SCANH’s insurance by operation of law.
Because the policies remain with SWDNH/SCANH, the terms of the Commercial Union, CIGNA and CNA policies will govern what entities are covered. A document labeled “endorsement # 1” of Policy No. CE 9206-002 issued to Sanitas Service Corporation and effective January 1, 1973 remains in the insurer’s file *52 on Commercial Union Policy No. CE 9206-002. This endorsement amends the definition of insured to include:
The persons or organizations listed in the Declarations and any subsidiary (or subsidiary thereof) and any other organization actively controlled and managed by such person or organization or its subsidiary (or any subsidiary thereof).
Affidavit of Ellen Martin filed in support of Commercial Union’s Motion for Partied Summary Judgment, dated July 18, 1990, denied May 3, 1991, (Martin Aff.) pars. 1-4, 7 and Ex. C.
WMNA is neither a named insured nor an organization listed in the Declarations, nor is it a subsidiary of a named insured, subsidiary of a subsidiary, or an organization “actively controlled and managed” by a named insured or by any level of subsidiary of the named insured. Accordingly, WMNA cannot assert a claim for defense under Commercial Union Policy No. CC 9602-002. Standard Marine Ins. Co. v. Federal Ins. Co., 336 N.Y.S.2d 692, 695 (App.Div. 1st Dept. 1972) (policy which covered named insured and its wholly owned subsidiaries, affiliated and controlled entities, did not cover parent company which had acquired insured through stock purchase and which was neither a named insured nor an affiliated and controlled entity of an insured).
Endorsement No. 2 in CIGNA P&C Policy No. CG 273530 reads as follows:
The definition of insured is amended to include the persons or organizations listed in Endorsement #1 and any subsidiaries (or any subsidiaries thereof) and any other organizations actively controlled and managed by such persons or organizations or its subsidiaries (or any subsidiaries thereof). However, this agreement does not apply to those entities listed in Endorsement #1 to which this policy does not apply.
Affidavit of Thomas J. Jennings, Ex. H.
WMNA is neither a named insured nor an organization listed in Endorsement No. 1, nor is it a subsidiary of a named insured, subsidiary of a subsidiary, or an organization “actively controlled and managed” by a named insured or by any level of subsidiary of the named insured. Accordingly, WMNA cannot assert a claim for defense under the CIGNA P&C policy. Standard Marine, supra at 695.
Proof of CNA Policy No. CCP 2436103 for the period July 1, 1975 to July 1, 1978 depends largely on the affidavit of then Vice President of Sanitas and the officer in charge of its national insurance program. Affidavit of Michael B. MacBryde (MacBryde Aff.). MacBryde states that CNA provided “comprehensive general liability insurance to Sanitas and all of its subsidiaries, including Sanitas/NH.” MacBryde Aff., par. 5. Neither party has produced documentary evidence of provisions which name or define additional entities to be covered by the policy. Thus, WMNA cannot demonstrate at trial this policy could provide coverage to WMNA as a successor parent corporation, and CNA is entitled to summary judgment on this issue.
Policy No. CCP 190-1759 issued by CNA Transportation for the period January 1, 1978 to January 1, 1981 afforded coverage to
Sanitas Services Corporation and its subsidiaries, and subsidiaries thereof, now or subsequently owned, created of acquired and any other entity over which Sanitas Service Corporation assumes active management and/or financial control.
Endorsement No. 1 attached to MacBryde Aff. as Ex. E. MacBryde asserts that this is a true and correct copy of the policy. MacBryde Aff. par. 12. WMNA is not a subsidiary of Sanitas Service Corporation, nor is it under “active management and/or financial control” of Sanitas. Standard Marine, supra at 695. Because WMNA cannot show that the policies of the defendants provide it coverage, the insurers are entitled to summary judgment on the issues of defense and indemnity of WMNA on the EPA claim.
WMNA’s additional claims in Count V for breach of insurance contract, in Count VI for violation of M.G.L.c. 93A, c. 176D and N.H. RSA c. 358-A, and in Count VII for breach of the implied covenant of good faith and fair dealing must also fail. Two recent decisions, similarly holding that there is no obligation upon an insurer to defend in landfill pollution situations, summarily dispatch with these types of claims. In Landover, Inc. v. Liberty Mutual Insurance Co., 36 Mass.App.Ct. 177, the 176D and 93A claims are rejected in footnote 5 on page 179. Judge O’Toole of this Court reaches the same conclusion in one sentence in Roche Brothers Barrel and Drum, Inc. v. Employers Fire Insurance Co. (Middlesex, No. 91-6120, January 1994) at page 11 As to plaintiff WMNA, the insurers are entitled to summary judgment on all issues.
II. PRIMARY INSURERS’ DUTY TO DEFEND WMNH.
Although insurers have no duties to WMNA under the policies provided to Sanitas, there remains a question concerning their duties to defend and indemnify WMNH, the successor corporation to SWDNH. Commercial Union argues that because Policy No. CC 9206-002 was issued to Sanitas Service Corporation, a Connecticut corporation, and because it was delivered in Connecticut, Massachusetts choice of law rules require that Connecticut law govern the interpretation of the policy. Commercial Union Ins. Company’s Memorandum in Support of its Motion for Summary Judgment (Doc. #32), pp. 5-6, citing Bushkin Assoc. v. Raytheon Co., 393 Mass. 622 (1985). According to Commercial Union, although Connecticut courts have not declared the obligations of the insurer to defend and indemnify its insured in the context of an EPA administrative claim under *53 CERCLA, “Connecticut law is generally in accord with Massachusetts law on the nature and extent of these obligations.” Commercial Union Ins. Company’s Memorandum, p. 6, citing Alderman v. Hanover Ins. Group, 169 Conn. 603, 363 A.2d 1102, 1106 (1975) (an insurer has a duty to defend if the claim against the insured alleges facts within coverage). Commercial Union submits that Connecticut would follow Massachusetts decisions on the nature and scope of the insurer’s defense and indemnity obligations in the context of an EPA claim under CERCLA. Id. Consequently, this Court will apply relevant Massachusetts law to define Commercial Union’s defense and indemnity obligations to WMNH as well as to define the obligations of Cigna P&C and CNA.
According to Massachusetts law, “the initial duty of the liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the third-party complaint are ‘reasonably susceptible’ of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense.” Liberty Mutual Ins. Co. v. SCA Services, Inc., 412 Mass. 330, 331-32 (1992), citing Continental Casualty Co. v. Gilbane Bldg. Co., 391 Mass. 143, 146-47 (1984), quoting Sterilite Corp. v. Continental Casualty Co., 17 Mass.App.Ct. 316, 318 (1983), rev. denied 391 Mass. 1102 (1984).
A. CONFUSION OVER THE IDENTITY OF THE PRP AND INSURERS’ DUTY TO DEFEND WMNH.
In a letter dated November 25, 1988, the EPA notified WMNA that it was a potentially responsible party and might be liable for cleanup of hazardous waste at the Auburn Road Landfill. Letter of Martin S. Hohman, Director of Waste Management Division, U.S. Environmental Protection Agency, to Waste Management of No. America, dated November 25, 1988, p. 2, Affidavit of Thomas Jennings, Ex. A (PRP Letter). The insurers had no duty to defend WMNA. Because the PRP letter failed to mention WMNH, there was no suit for damages against WMNH in November 1988, and there was no duty on the part of the primary insurers to defend WMNH on that date.
In its letter of August 14, 1990 the EPA explained that its November 1988 PRP letter and April 1990 special notice, which were addressed only to WMNA, were intended to include WMNH. Affidavit of Thomas J. Jennings, par. 11 and Ex.C. The Administrative Order of August 31, 1990, was addressed only to WMNH. In the Findings of Fact the Regional Administrator of Region I named WMNH, not WMNA, as a successor to SWDNH and its predecessors, and she listed the various hazardous chemicals which predecessors of WMNH transported to the site and dumped in the landfill. The Administrative Order orders WMNH to make certain corrective responses to contamination of soil, groundwater, surface water, and air on and off the site. Jennings Aff. par. 12 and Ex. D. Taken together, the EPA letter of August 14, 1990 and the Administrative Order of August 31, 1990 (basically an enforcement order) state the elements of a suit for damages on account of property damages as established in Hazen Paper. Hazen Paper Co., supra at 692 and 695. As of August 31, 1990 EPA had made a claim against WMNH which would give rise to a duty to defend on the part of the defendant insurers if the claim was reasonably susceptible of an interpretation that it came within provisions of the policies.
B. PROVISIONS OF THE COMMERCIAL UNION, CIGNA P&C AND CNA/TRANSPORTATION (CCP 190-1759) PRIMARY POLICIES AND DUTY TO DEFEND.
This discussion refers to Commercial Union Policy No. CC-9206-002 for the period January 1, 1973 to March 1, 1974; Cigna P&C Policy No. CG 273530 for the period March 1, 1974 to July 1, 1975; and Policy No. CCP 190-1759 issued by CNA Transportation for the period January 1, 1978 to January 1, 1981.[3] These policies contain the following defense provision:
the company shall have the right and duty to defend any suit against an insured seeking damages on account of bodily injury or property damage, even if the allegations of the suit are groundless, false or fraudulent. . .
In the Cigna Policy No. CG 273530, Commercial Union Policy No. CC-9206-002 and CNA Policy No. CCP 190-1759 each insurer agrees, subject to certain limitations, to provide coverage for liability due to property damage caused by an “occurrence." The policies define “occurrence” as an “accident, including continuous or repeated exposure to conditions, which results in . . . property damage neither expected nor intended from the standpoint of the insured.” The Administrative Order of August 31, 1990 alleges that WMNH is responsible for contamination at the Auburn Road Landfill caused by the release of hazardous substances.
The Commercial Union, Cigna and CNA policies also contain the following pollution exclusion:
This insurance does not apply:
(f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.[4]
Because the property damage at the Auburn Road Landfill arose from the dumping of hazardous waste, the insurers would be obligated to defend WMNH only if the EPA complaint were reasonably susceptible of an interpretation that the release of pollutants was “sudden and accidental.” Liberty Mutual Ins. Co. v. SCA Services Inc., 412 Mass. 330, 334-35 (1992). If *54 the underlying complaint does not allege a “sudden and accidental” discharge, the resulting damage is eliminated from coverage, even though the discharge might qualify as an “occurrence.” The threshold question, therefore, is whether the EPA complaint alleges a sudden and accidental release of pollutants. Liberty Mutual Ins. Co. v. SCA Services, Inc., supra at 335.[5] “Within routine operations any single discharge may have occurred suddenly and accidentally . . . but [this fact] ‘cannot contradict a reasonable reading of the allegations that an entire pattern of conduct was not a sudden and accidental occurrence.’ ” Id. at 338 citing and quoting A. Johnson & Co. v. Aetna Cos. & Surety Co., 933 F.2d 66, 75 (Ist Cir. 1991); Lumbermans Mutual Ins. Co. v. Belleville Industries, 938 F.2d 1423, 1429 (1st Cir. 1991); Great Lakes Container Corp. v. National Union Fire Ins. Co., 727 F.2d 30, 33-34 (1st Cir. 1984) (pollution exclusion applies and no duly to defend or indemnify arises where a company has for a lengthy period of time purposefully and regularly been carrying on operations involving continual pollution).
The original EPA letter to WMNA in 1988 alleged that “you did by contract, agreement, or otherwise, arrange for the disposal or treatment of hazardous substances found at the facility.” PRP Letter at 2. The Administrative Order of August 31, 1990 alleged that WMNH was the successor to SWDNH. The regular business of the SWDNH was waste disposal, and the PRP letter and Administrative Order stated that it had by its intentional acts arranged for disposal of hazardous waste at the site. Neither the PRP letter nor the Findings of Fact in the 1990 Administrative Order alleges that the releases which caused the damage were sudden and accidental.
Therefore, the underlying complaint is not reasonably susceptible of an interpretation that it falls within the exception to the pollution exclusion in the policy. In addition, “there is no duty to defend unless facts alleged in the complaint, or known or readily knowable by the insurer, place liability within the coverage of the policy.” Terrio v. McDonough; Hartford Fire Ins. Co., 16 Mass.App.Ct. 163, 166 (1983). The 1988 PRP letter and the 1990 Administrative Order were preceded by a decade of investigations of the Auburn Road Landfill during which predecessors of WMNH and the public were notified of the long-term dumping of hazardous waste at the site. It would not be reasonable to conclude that the releases at the landfill were sudden and accidental. Therefore, the above-named insurers have no duiy to defend WMNH against the EPA claims.
C. THE PROVISIONS OF CNA POLICY NO. 2436103 AND DUTY TO DEFEND WMNH.
After conducting diligent searches neither party has been able to locate the complete policy which CNA issued to Sanitas for the period 1975-1978. The policyholder suing to enforce the liability of an insurer under a lost insurance policy has the burden of proving with circumstantial evidence both that the policy existed and what the terms and conditions of that policy were from which the alleged duty of the insurer arose. Barry R. Ostranger and Thomas R. Newman, Handbook on Insurance Coverage Disputes, s. 15.03 (1992), citing Parker-Hannifan Corp. v. American Motorists Ins. Co., 88-5031 (D.N.J. July 23, 1990), 4 Mealey’s Insurance Litigation Reports; Burroughs Wellcome Co. v. Commercial Union Ins. Co., 632 F.Supp. 1213, 1222 (S.D.N.Y. 1986). The proof may consist of any relevant secondary evidence. Keene Corp. v. Insurance Co. of N. America, No. 78-1011 (D.D.C. Jan. 30, 1981), 1981 Fire and Casualty Cas. (CCH) 712 (D.D.C. 1981) (standard form policy).[6] Ultimately, plaintiffs must prove the existence, execution, delivery, and contents of the policy by clear and convincing evidence. Sylvania Electric Products, Inc. v. Flannigan, 352 F.2d 1005, 1008 (1st Cir. 1965) (more strictness of proof is required where the writings are only involved collaterally). But see, Medical Malpractice Joint Underwriting Ass’n v. Commissioner of Insurance, 395 Mass. 43, 45-51 (1985). At the summary judgment stage, however, plaintiffs must establish the existence and terms of the policy and that there are no disputes about the terms. State of New York v. Union Fork & Hoe, No. 80-CV-688 (N.D.N.Y. 1992), 6 Mealey’s Insurance Litigation Reports at G-2.
In its supporting affidavit WMNA and WMNH offer both documentary evidence and the testimony of Michael B. MacBryde, who from 1973 to 1983 was the officer of Sanitas in charge of its national insurance program. MacBryde Aff., November 1992, par. 1. According to MacBryde, he and other Sanitas officials personally negotiated with CNA for “comprehensive general liability insurance for Sanitas and all of its subsidiaries, including Sanitas/NH.” MacBryde further states that CNA agreed to provide the desired coverage in exchange for premiums of about $3 million per year. MacBryde Aff., par. 5. MacBryde offers the certificate of insurance to prove the existence of the policy No. CCP 2436103; the period of insurance, July 1, 1975 to July 1, 1978; the policy limits, and the inclusion of general liability coverage.[7]
MacBryde offers via his affidavit the standard form state provisions from the contemporaneous CNA policy, No. CCP 3327306, which provided comprehensive general liability coverage to off-shore operations of Sanitas in Puerto Rico and the Virgin Islands, to prove that CNA policy No. CCP 2436103 for Sanitas and Sanitas/N.H. for the period July 1975 to July 1978 covered property damage caused by pollution. Mac-Bryde Aff at Ex. C. In particular, this endorsement in policy No. CCP 3327306 contains a paragraph deleting the pollution exclusion in New Hampshire. This fragment of policy No. CCP 3327306 is offered as a basis for the inference that there was a pollution exclusion in the main body of the missing policy, No. 2436103, and that, therefore, the missing policy also contained the endorsement deleting the pollution exclusion in New Hampshire. •
*55 Because insurance policies are often customized or manuscripted, the use of a standard form in one policy is not by itself proof that it was included in a different policy. State of New York v. Union Fork & Hoe, supra at G-6 to G-7; Keene Corp. v. Insurance Co. of N. America, supra at 714. In addition to proffering the standard state provisions form of polity No. CCP 3327306, MacBryde avers, based upon his first-hand knowledge, that the New Hampshire deletion found in the standard state provisions of that policy was included in all policies covering the operations of Sanitas in the United States. MacBryde testifies that he “believes” that the deletion was included in the missing policy, No. CCP 2436103. MacBryde Aff., par. 7.
In its opposition CNA concedes that it is likely that the missing insuring agreement in policy No. 2436103 for the period July 1, 1975 to July 1, 1978, contained the same pollution exclusion. CNA, however, rejects WMNA’s use of the standard form deletion of the pollution exclusion of policy No. CCP 3327306 to prove that the missing policy, No. 2436103, contained the same deletion. Yet this proposition is supported by MacBryde’s affidavit. “When a motion for summary judgment is made and supported ... the adverse party may not rest upon the mere allegations and denials of his pleading but his response . . . set forth specific facts showing that there is a genuine issue for trial. Madsen v. Erwin, 395 Mass. 715, 719 (1985).
CNA offers no documentary evidence, nor does it offer evidence to dispute MacBryde’s affidavit that the deletion was in all CNA policies covering Sanitas, including No. 2436103. CNA merely argues that because the policy was issued and delivered in Connecticut, CNA was not required to conform to New Hampshire law by deleting the pollution exclusion. This does not amount to a denial that the deletion was included, it merely demonstrates that legally it did not need to be in the policy. Cf. Union Fork & Hoe, supra at G-7 (insurer disputed testimony of insured’s employee with agent’s testimony disputing outright and with evidence disputing inference insured drew from failure to find filing of customized insurance provision filed in state office).
Plaintiffs have established by uncontroverted testimony that CNA policy No. CCP 2436103, covering Sanitas and Sanitas/NH for the period July 1, 1975 to July 1, 1978, contained an endorsement deleting the pollution exclusion for operations and occurrences in New Hampshire. Because the pollution exclusion does not preclude coverage, CNA has a duty to defend and indemnify its insured on the EPA claims for occurrences within the CNA policy period.
III. MOTIONS OF COMMERCIAL UNION, CIGNA P&C, AND CNA (POLICY NO. CCP 190-1759) FOR SUMMARY JUDGMENT ON THE DUTY TO INDEMNIFY.
Because the policies of Commercial Union, Cigna P&C, and CNA (under Policy No. CCP 190-1759) do not cover the long-term pollution damage alleged in the underlying EPA claims, the insurers have no duty to defend WMNH. Therefore, these insurers are entitled to summary judgment on the issue of their duty to indemnify WMNH on the EPA claim.
IV. MOTIONS FOR SUMMARY JUDGMENT ON COUNTS VI, VII, VIII OF PLAINTIFFS’ AMENDED COMPLAINT.
Plaintiffs have made additional claims in Count VI of their Amended Complaint for violation of M.G.L.c. 93A, c. 176D, in Count VII for breach of the implied covenant of good faith and fair dealing, and in Count VIII for breach of fiduciary duty.
Plaintiffs have alleged in Count VI of the Amended Complaint that the insurers committed unfair insurance practices in violation of Massachusetts General Laws c. 176D and 93A and New Hampshire Revised Statutes Annotated, c. 358-A. Two recent decisions, similarly holding that there is no obligation upon an insurer to defend in landfill pollution situations, summarily dispatch with these types of claims. In Landover, Inc. v. Liberty Mutual Insurance Co., 36 Mass.App.Ct. 177, the 176D and 93A claims are rejected in footnote 5 on page 179. Judge O'Toole of this Court reaches the same conclusion in one sentence in Roche Brothers Barrel and Drum, Inc. v. Employers Fire Insurance Co. (Middlesex, No. 91-6120, January, 1994) at page 11.
In rejecting Count VI it may be added that there is no independent right of action under G.L.c. 176D. Mahoney v. John Hancock Mutual Life Ins. Co., 6 Mass.App.Ct. 919, 921 (1978). Neither is Chapter 176D incorporated into G.L.c. 93A, s. 11. Boston Symphony Orchestra v. Redgrave, 406 Mass. 7, 14 n. 5 (1989); Jet Line Services, Inc v. American Employers Ins. Co., 404 Mass. 707, 717 n. 11 (1989); Transamerica Ins. Group v. Turner Construction Co., 33 Mass.App.Ct. 446, 451-52 (1992).
If at the time of its decision, “an insurer could reasonably have concluded that no aspect of the [insured’s] claims was within the scope of coverage and that, therefore, there was no duty to defend [the insured] ... an insurer’s refusal to defend, even if ultimately determined to be wrong, does not support a claim under G.L.c. 93A. Polaroid Corp. v. The Travelers Indemnity Corp., 414 Mass. 747, 754 (1993), citing Boston Symphony Orchestra v. Redgrave, supra at 14-15. In this case the EPA Administrative Order of August 31, 1990, which made clear that WMNH was a PRP, also made clear that the alleged property damage was not caused by sudden and accidental releases of pollutants. Therefore, insurance coverage under Commercial Union Policy No. CC 9206-002 and Cigna P&C Policy No. CG 273530 is precluded by the pollution exclusions contained in those policies. Furthermore, the decisions of Commercial Union and Cigna not to defend WMNH were reasonable and did not give rise to an action under Massachusetts General Laws, Chapters 176D and 93A and/or N.H. RSA *56 c. 358-A. CNA’s decision that the EPA complaint failed to allege claims falling within the coverage of their policies was reasonable, given the fact that neither WMNH nor CNA could locate the policy covering the period 1975-1978 and that the policy for the period 1975-1978 which WMNH produced contained the pollution exclusion. There is no basis for a 93A claim. The insurers are entitled to summary judgment on Count VI of the Amended Complaint for unfair insurance practices in violation of Massachusetts General Laws, Chapters 176D and 93A and/or New Hampshire Revised Statutes Annotated, c. 358-A. For the same reasons Commercial Union, Cigna P&C and CNA are entitled to summary judgment on Count VII of the Amended Complaint for breach of the covenant of good faith and fair dealing.
Plaintiffs claim that the insurers breached their fiduciary duties to WMNH by refusing to defend WMNH against the EPA claim and by their improper handling of the claim. On July 26, 1990 Commercial Union moved to dismiss Count VIII of the Amended Complaint, claiming that the fiduciary duty concept does not govern the insurer’s interpretation of its defense duties under that contract. By order dated December 5, 1990, this Court (Cratsley, J.) granted the motion. SCA Disposal Services of New England, Inc. v. Central National Ins. Co. of Omaha, Civil No. 90-0393 (Suffolk Super. Ct. Dec. 5, 1990). Based upon the reasoning of that decision, defendant CGL insurers’ interpretation of their duties under the contract does not give rise to a fiduciary duty. For the same reasons set forth in that 1990 order in favor of Commercial Union, CNA and Cigna P&C are entitled to summary judgment on Count VIII.
As to plaintiff WMNA, the CGL insurers are entitled to summary judgment on all counts.
IV. THE EXCESS INSURANCE POLICIES.
From December 18, 1972 to July 1, 1974 Stonewall Insurance Company (Stonewall) provided excess insurance coverage to Sanitas Service Corporation and its subsidiaries. Stonewall agreed to indemnify its insureds for damages on account of property damage arising out of an occurrence during the policy period and arising out of hazards covered by the underlying insurance policy. In addition, Endorsement 2 of the Stonewall policy, effective December 18, 1972, outlined the standard form pollution exclusion and contained the internal exception for sudden and accidental releases of pollutants.
Stonewall has no duty to indemnify WMNH because the underlying insurance policy did not afford coverage for property damage arising out of gradual pollution and because the pollution exclusion in the excess policy precluded coverage. Commercial Union Insurance Company provided underlying insurance coverage to Sanitas Service Corporation and its subsidiaries from January 1, 1973 to March 1, 1974, with CGL Policy No. CC-9206-002. The standard form policy, which the parties agree is the form of Policy No. CC-9206-002, contains a pollution exclusion with an internal exception for damage caused by sudden and accidental releases. The 1988 PRP letter which EPA sent to WMNA and the 1990 Administrative Order which EPA addressed to WMNH contain no allegations that the releases at the Auburn Road Landfill were sudden and accidental. The record at this summary judgment stage contains no evidence that the releases were sudden and accidental. To the contrary, depositions of former Sanitas drivers show that the releases were intentional and were part of the routine operations of SWDNH. Therefore, the underlying EPA claims are not covered by Commercial Union Policy No. CC-9206-002. Because the underlying Commercial Union CGL policy does not afford coverage, Stonewall’s duty to indemnify does not arise. Even if the underlying Commercial Union policy gave rise to a duty on the part of Stonewall to indemnify WMNH, the pollution exclusion in Endorsement 2 of Stonewall’s Policy No. 11666 would preclude coverage because the damage at the Auburn Road Landfill did not arise out of a sudden and accidental release. Stonewall is entitled to summary judgment on the issue of its duty to indemnify WMNH under Policy No. 11666. No excess insurer, including Stonewall, has a duty to indemnify WMNA because no underlying insurance policy afforded coverage to WMNA. Sée Section I of the Discussion section of this opinion.
Cigna P&C provided excess insurance coverage to Sanitas Service Corporation and its subsidiaries for the period July 1, 1974 to July 1, 1975 with Policy No. UL 843242. Neither Cigna nor the plaintiffs have been able to locate a copy of this policy, and thus its provisions are unknown. However, the general rule is that the excess insurance coverage is triggered only upon exhaustion of the policy limits of the underlying insurance coverage. In this case, the underlying Cigna CGL Policy No. CG 273530 for the period March 1, 1974 to July 1, 1975 did not provide coverage to WMNH. Therefore, Policy No. UL 843242 will not be triggered and Cigna does not owe WMNH a duty to indemnify under this excess insurance policy. Cigna is entitled to summary judgement on the issue of its duty to indemnify WMNH under Policy No. UL 843242.
Central National Insurance Company of Omaha (Central National) provided excess insurance coverage to Sanitas Service Corporation and its subsidiaries under the following policies and for the stated periods:
Policy No. CNU 12-29-59, July 1,1975 to July 1,1976
Policy No. CNU 12-49-07, July 1,1976to July 1,1977
Policy No. CNU 12-76-80, July 1, 1977 to July 1, 1978 (canceled January 1, 1978)
Policy No. CNU 12-82-37, January 1, 1978 to January 1, 1981 (canceled July 1, 1979)
Policy No. CNU 03-49-28, July 1, 1979 to January 1, 1980
*57 Policy No. CNU 03-61-05, January 1, 1980 to January 1, 1981[8]
Affidavit of Rosemary Boiler, Ex. 5 through Ex. 11.
CNA provided the underlying insurance for the period July 1, 1975 to July 1, 1978 with CGL Policy No. CCP 243-61-03 and for the period January 1,1978 to January 1, 1981 with Policy No. CCP 190-1759. Plaintiffs have provided uncontroverted testimony that Policy No. CCP 243-61-03 contained an endorsement deleting the pollution exclusion for operations in New Hampshire. Thus, Policy No. 243-61-03 does afford coverage to WMNH, successor to insured SWDNH, for damages on account of properly damage at the Auburn Road Landfill which arose out of the SWDNH’s releases of industrial waste at the site.
Central National’s excess insurance policies contain the pollution exclusion without the internal exception for sudden and accidental releases:
It is hereby understood and agreed that, except insofar as coverage is available to the assured in the underlying insurances set out in the attached schedules, this policy shall not apply:
(e) to personal injury or properly damage arising out of the discharge, dispersal, release or escape of smoke vapors, soot, firmes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse of body of water.
However, the preface to the exclusion provides that the pollution exclusion of the Central National excess policy will apply, “except insofar as coverage is available to the assured in the underlying insurances . . .” Affidavit of Robert C. Towey, Exs. A, B, C (attached policies). In this case CNA Policy No. CCP 243-61-03 for the period July 1, 1975 to July 1, 1978 contained an endorsement deleting the pollution exclusion for operations in New Hampshire. Because CNA Policy No. CCP 243-61-03 provides coverage for property damage at the Auburn Road Landfill — even for damage caused by gradual and/or routine releases of pollutants — during the period July 1,1975 to January 1,1978, Central National’s pollution exclusion does not apply. If the limits of the underlying CNA Policy No. CCP 243-61-03 are exceeded, the following Central National excess insurance policies shall be called upon to indemnify WMNH, the successor to the insured SWDNH:
Policy No. CNU 12-29-59, July 1,1975 to July 1,1976
Policy No. CNU 12-49-07, July 1,1976 to July 1,1977
Policy No. CNU 12-76-80, July 1, 1977 to July 1, 1978 (canceled January 1, 1978)
Plaintiffs provided a “true and correct copy” of CNA Policy No. CCP 190-1759 for the period January 1, 1978 to January 1, 1981. That policy contains the standard form pollution exclusion with an internal exception for sudden and accidental releases, and it does not contain any endorsement deleting the exclusion. Plaintiffs have not offered testimony that any endorsement deleting the pollution exclusion applied to this policy. Compare MacBryde Aff. par. 7 with par. 12. It appears that the plaintiffs cannot demonstrate now or at trial that Policy No. CCP 190-1759 provided coverage for the damages arising out of SWDNH’s continuing and intentional releases of industrial pollutants at the Auburn Road Landfill. Because the underlying policy for the period January 1, 1978 to January 1, 1981 did not afford coverage, no duty on the part of Central National arose under its three excess insurance policies for that period.
Central National is entitled to summary judgment on the issue of its duty to indemnify WMNA under all policies. Central National is entitled to summary judgment on its duty to indemnify WMNH under the following excess insurance policies:
Policy No. CNU 12-82-37, January 1, 1978 to January 1, 1981 (canceled July 1, 1979)
Policy No. CNU 03-49-28, July 1, 1979 to January 1, 1980
Policy No. CNU 03-61-05, January 1, 1980 to January 1, 1981
Central National is not entitled to summary judgment on the issue of its duty to indemnify WMNH under the following excess insurance policies which were in force during the period in which CNA Policy No. CCP 243-61-03 provided underlying CGL coverage:
Policy No. CNU 12-29-59, July 1,1975 to July 1,1976
Policy No. CNU 12-49-07, July 1,1976 to July 1,1977
Policy No. CNU 12-76-80, July 1, 1977 to July 1, 1978 (canceled January 1, 1978)
All excess insurers are entitled to summary judgment on the issue of their duty to indemnify WMNA because no underlying insurance policy afforded coverage to WMNA. .
CONCLUSION
Commercial Union and Cigna P&C are entitled to summary judgment on the issues of their duties to defend and indemnify WMNA and WMNH. CNA is entitled to summary judgment on the issues of its duties to defend and indemnify WMNA and WMNH under Policy No. CCP 190-1759. CNA is entitled to summary judgment on the issues of its duties to defend and indemnify WMNA under Policy No. CCP 2436103, but it is not entitled to summary judgment on the issue of its duties to defend and indemnify WMNH under Policy No. 2436103. WMNH is entitled to summary judgment on the issue of the duty of CNA to defend WMNH under Policy No. 2436103. Defendant insurers are also entitled to summary judgment on Counts VI-VIII of the Amended Complaint.
All excess insurers are entitled to summary judgment on the issue of their duly to indemnify WMNA because no underlying insurance policy afforded coverage to WMNA. Because the underlying Commercial *58 Union policy did not afford coverage to WMNA on the EPA claim, Stonewall is entitled to summary judgment on the issue of its duty to indemnify WMNH under Policy No. 11666. Because the underlying Cigna CGL policy did not afford coverage to WMNH on the EPA claim, Cigna is entitled to summary judgement on the issue of its duty to indemnify WMNH under Policy No. UL 843242. Central National is entitled to summary judgment on its duty to indemnify WMNH under the following excess insurance policies:
Policy No. CNU 12-82-37, January 1, 1978 to January 1, 1981 (canceled July 1, 1979)
Policy No. CNU 03-49-28, July 1, 1979 to January 1, 1980
Policy No. CNU 03-61-05, January 1, 1980 to January 1, 1981
Central National is not entitled to summary judgment on the issue of its duty to indemnify WMNH under the following excess insurance policies which were in force during the period in which CNA Policy No. CCP 243-61-03 provided underlying CGL coverage:
Policy No. CNU 12-29-59, July 1,1975 to July 1,1976
Policy No. CNU 12-49-07, July 1,1976 to July 1,1977
Policy No. CNU 12-76-80, July 1, 1977 to July 1, 1978 (canceled January 1, 1978)
ORDER
It is ORDERED that the motions for summary judgment of Commercial Union and Cigna P&C and CNA, but only as to CNA Policy No. CCP 190-1759 are ALLOWED on all counts of the Amended Complaint. It is ORDERED that CNA’s motions for summary judgment, insofar as they concern the duties to defend and indemnify WMNH under Policy No. CCP 2436103 are DENIED, but that the motions are ALLOWED, insofar as they concern duties to defend or indemnify WMNA under Policy No. CCP 2436103. It is ORDERED that the insurers’ motions for summary judgment on Counts VI-VIII of the Amended Complaint are ALLOWED. It is ORDERED that the plaintiffs’ motion for summary judgment on the duty of CNA be ALLOWED, but only as to the duty of CNA to defend WMNH under Policy No. CCP 2436103. It is ORDERED that all other motions of plaintiffs for summary judgment are DENIED. It is ORDERED that the motion for summary judgment of Stonewall Insurance Company is ALLOWED. It is ORDERED that the motion of Cigna P&C for summary judgment on the issue of its duty to indemnify WMNA and WMNH under Policy No. UL843242 is ALLOWED. It is ORDERED that the motion for summary judgment of Central National Insurance Company of Omaha is ALLOWED as to its duty to indemnify WMNA, and is ALLOWED as to its duty to indemnify WMNH under policies No. CNU 12-82-37, No. CNU 03-49-28, No. CNU 03-61-05, and is DENIED as to its duties to defend and indemnify WMNH 34 under policies No. CNU 12-29-59, No. CNU 12-49-07, No. CNU 12-76-80.

 CNA Policy No. CCP 2436103, covering the period July 1, 1975 to July 1, 1978, contains an endorsement deleting the pollution exclusion in New Hampshire, and it is discussed separately. Cigna P&C Policy No. UL 843242 is an excess insurance policy which does not afford defense.

 WMNA has established by uncontroverted testimony at this summary judgment stage that the CNA policy No. CCP 2436103, covering Sanitas and Sanitas/NH for the period July 1, 1975 to July 1, 1978, contained an endorsement deleting the pollution exclusion for operations and occurrences in New Hampshire.

 A number of Superior Court decisions have followed Liberty Mutual Ins. Co. v. SCA Services. Inc.: United Technologies Corp. v. Liberty Mutual Ins. Co., No. 87-7172 (Superior Court, Suffolk County, August 1993); Bleakney v. California Union Ins. Co. Inc., No. 90-00418 (Norfolk Superior Court, April 15, 1993); MSM Industries, Inc. v. United States Fire Ins. Co., No. 90-6968 (Middlesex Superior Court, January 19, 1993); Emhart Corporation v. Aetna Casualty & Surety Co., No. 90-0134 (Suffolk Superior Court, May 29, 1992).

 Parker-Hannifan Corp. v. American Motorists Ins. Co., 88-5031 (D.N.J. July 23, 1990); Keene Corp. v. Insurance Co. of N. America, No. 78-1011 (D.D.C. Jan. 30, 1981); and State of New York v. Union Fork & Hoe, No. 80-CV-688 (N.D.N.Y. 1992), all are found in Appendix of CNA’s Memo in Support of its Summary Judgment Motion with Regard to the Sanitas Claims.

 A notation on the Declarations page indicates that provisions of the policy covering entities in Louisiana were canceled on September 15, 1976, when these entities were sold. See Affidavit of David Nem, par. 6 and Ex. A.

 Central National claims that when SWDNH ceased to be a subsidiary of Sanitas Service Corporation on May 2, 1980 it ceased to be insured under Policy No. 03-61-05.
Central National provided excess insurance policy number 00-52-15 to Sanitas Service Corporation for the period January 1, 1981 to January 1, 1982. Plaintiffs have not raised any claim based upon any underlying insurance policy for this period. This policy did not include SWDNH.