VIOLA LEWIS *v.* FANNIE KASIMER

KING, C. J., MURPHY, ALCORN, SHANNON and HOUSE, JS.

Argued June 1—decided June 28, 1965

*William J. Cousins,* for the appellant (plaintiff).

*George E. McGoldrick,* with whom, on the brief, was *David E. FitzGerald, Jr.,* for the appellee (defendant).

HOUSE, J. The plaintiff, a tenant of the defendant, brought this action to recover damages for personal injuries resulting from a fall alleged to have been caused by the negligence of the defendant in failing to maintain a stairway in a reasonably safe condition. The trial court, on the motion of the defendant, set aside the verdict for the plaintiff and

rendered judgment for the defendant notwithstanding the verdict because on the pleadings the question of control was the decisive issue and, as a matter of law, the evidence was insufficient to show that the defendant retained or agreed to retain control of the allegedly defective portion of the leased premises. The plaintiff has appealed.

Since the parties agreed that the defendant's husband was her authorized agent, in the interest of simplicity this court, where feasible, will conform to the terminology employed in their briefs and arguments and refer to the husband's agreements and actions as those of the defendant.

In reviewing the decision of the trial court on the motion to set aside the verdict and for judgment notwithstanding the verdict, we must consider the evidence printed in the appendices to the briefs in the light most favorable to the plaintiff. Practice Book § 641; *Chanosky* v. *City Building Supply Co.*, 152 Conn. 642, 643, 211 A.2d 141; *Kingston* v. *Blake*, 151 Conn. 714, 715, 201 A.2d 460; *Grills* v. *Pepsi-Cola Bottling Co.*, 151 Conn. 627, 628, 201 A.2d 185.

Under this rule, the jury could have found the following facts: The defendant owned three dwellings known as 672, 674 and 678 Orchard Street, in New Haven. The three separate buildings were on one lot with access to the rear of each by a common driveway. While two families lived in 672 and three families in 678, 674 was a single-family house occupied by the plaintiff and her son. The plaintiff first rented the house in April, 1960, on a month-to-month tenancy. There were two keys to the front door. The defendant gave one to the plaintiff and retained the other, saying, "I'm keeping one so if any repairs to be done, I can do it." The defendant also said: "When anything wrong with the house to let

me know and I will repair it." All the defendant's tenants disposed of garbage and rubbish in cans located in the rear of 672, the plaintiff using a path from the rear of her house to the garbage and trash depository. To enter and leave the rear of the house occupied by the plaintiff, it was necessary to use two steps, which were in a unit resembling a step-ladder in construction, the top of the steps being nailed to the house and the bottom resting on the ground. The defendant's husband customarily cleaned the snow from the path and these steps as well as from the walks around the three dwellings. He was in and about the premises at least once a week and from time to time inspected them, including the steps in the rear of the house occupied by the plaintiff. He testified that if the steps appeared to him to need repair he would immediately repair them without being told by the plaintiff to do so.

During her occupancy, the plaintiff had never made any repairs herself. Whenever anything needed fixing, she would tell the defendant's husband, and he or his son would attend to it, pursuant to an agreement with the plaintiff that the defendant would take care of any repairs provided the plaintiff let the defendant know they were needed. The plaintiff had never noticed anything wrong with the back steps and had never made any complaint about them to the defendant. The only time the defendant was in the house for any purpose other than to make repairs which the plaintiff had asked to be made was once when she requested repairs to a toilet bowl, which the defendant replaced, and then subsequently reentered to instal a new seat on the same toilet since the old seat on the new bowl "didn't look good enough." The plaintiff and her son worked and were, consequently,

absent from the house all day. They kept the back door barred from the inside so entry to make any repairs was made through the front door by use of the retained key.

In April, 1962, the plaintiff and her son were the only persons living in the house. Between 7:30 and 8:00 a.m. on April 20, Amos Williams, a boarder, showed the defendant's husband the back steps. He saw their condition and that they were a little weak, and he told Williams that he would take care of them. About 10:30 the same morning, as the plaintiff used the steps, they "came aloose all in one piece" and she fell, injuring herself. She called the defendant's husband, who, finding that the steps had to be replaced, removed them and nailed up the back door by putting two pieces of wood across it. The defendant's husband told the plaintiff to go to a doctor and that "he would take care of it." The defendant replaced the steps, and, during the two weeks that it took to replace them, the plaintiff did not use the back door.

The case was pleaded and tried on the claim that the defendant retained control of the allegedly defective steps. There was no allegation or claim of breach of any covenant to repair.

So far as the evidence discloses, the steps in question were used only as a means of access to or egress from the rear of the single-family house which the plaintiff rented from the defendant. Under these circumstances, in the absence of some agreement to the contrary, the steps, as an integral part of the premises, were, as a matter of law, included in the plaintiff's leasehold and were under the lessee's control, and the lessor was under no duty to repair them. *Bentley* v. *Dynarski,* 150 Conn. 147, 150, 186 A.2d 791; *Torre* v. *DeRenzo,* 143 Conn. 302, 306,

122 A.2d 25; *Martel* v. *Malone,* 138 Conn. 385, 389, 85 A.2d 246; *Central Coat, Apron & Linen Service, Inc.* v. *Indemnity Ins. Co.,* 136 Conn. 234, 237, 70 A.2d 126.

The appendices to the briefs contain no evidence of any express agreement that the defendant was to retain control of the rear steps, while leasing the entire remainder of the house to the plaintiff. Therefore, to sustain her allegation that the steps were nevertheless retained in the control of the defendant, the plaintiff had the burden of proving that there was an implied agreement.

The trial court properly concluded that the evidence submitted was insufficient to justify the jury in finding such an implied agreement. The undisputed evidence is that repairs to the demised premises were to be made by the defendant, who retained a key for that purpose, that the obligation to repair only arose upon notice from the plaintiff, and that the plaintiff gave no notice that these steps were in need of repair. The practice of the defendant's husband to shovel snow from the paths leading to the common disposal area indicated nothing more than a recognition by the defendant of the duty of keeping the portion of the premises in the defendant's control in a reasonably safe condition. Evidence of the gratuitous act by the defendant's husband of removing snow from the two back steps of the plaintiff's house while he was shoveling snow from the paths, the expressed interest of the defendant wife in keeping her property in good repair and even of the fact that her husband did repair these steps after the accident cannot be construed as proving control over the steps. At best, these acts might serve to corroborate other evidence, if there were any, indicating a reservation of a right of control.

They fall within those acts which are "open to too many explanations besides an assumption of control and . . . [are] too much outweighed by the implications growing out of the nature of the estate created by the leasing to afford a basis on which to find a reservation of control." *Bentley* v. *Dynarski,* supra, 152; *Masterson* v. *Atherton,* 149 Conn. 302, 311, 179 A.2d 592; *Shegda* v. *Hartford Connecticut Trust Co.,* 131 Conn. 186, 190, 38 A.2d 668; *Palimas* v. *Aress Realty Co.,* 130 Conn. 687, 692, 37 A.2d 243.

The trial court correctly concluded that the verdict in this case could not be based on any finding that the plaintiff had proven the essential allegation that the steps were retained in the control of the defendant so as to give rise to a duty to exercise reasonable care through inspection to have and keep them reasonably safe under the rule of cases such as *White* v. *DeVito Realty Co.,* 120 Conn. 331, 335, 180 A. 461, *Klahr* v. *Kostopoulos,* 138 Conn. 653, 655, 88 A.2d 332, *Noebel* v. *Housing Authority,* 146 Conn. 197, 200, 148 A.2d 766, and see *Masterson* v. *Atherton,* supra.

There is no error.

In this opinion the other judges concurred.