Esther M. Alderman, Administratrix (Estate of Abraham J. Alderman) v. The Hanover Insurance Group

House, C. J., Loiselle, Bogdanski, Longo and Barber, Js.

Argued October 8—decision released November 25, 1975

*James O'Connor Shea,* with whom, on the brief, was *Norman Zolot,* for the appellant (defendant).

*Jerrold H. Barnett,* for the appellee (plaintiff).

Longo, J. This appeal arises from an action brought to recover damages under a manufacturers' and contractors' schedule liability policy which had

been issued by the defendant, The Hanover Insurance Group, to the plaintiff's decedent, covering the period from March 27, 1961, to March 27, 1964. In 1963, the plaintiff was conducting her deceased husband's scrap iron and metal business. She contracted with the Hamilton Industrial Center, hereinafter the Center, to remove certain items from the two-story brick building which was the "boiler room" of the Center, so that new boilers could be installed. Among the items the plaintiff was to remove was a coal conveyor tower. The conveyor was made of steel, with a base about four feet square, and extended through the first and second floors to about fifteen feet above the roof of the brick building. While the employees of the plaintiff were attempting to remove it, that portion of the conveyor which extended above the roof toppled to the ground, crushing and tearing off parts of the roof and knocking down part of the brick wall of the second story of the building and part of a canopy. The defendant claimed the damage was not covered because of certain exclusions in the policy. Between August 6, 1963, and May 20, 1964, the plaintiff continued to demand payment from the defendant. The Center threatened suit for damages against the plaintiff, but before a suit was instituted, the plaintiff settled the claim for $5700. The plaintiff had also paid $87.50 for engineering service and $838.33 to replace lighting equipment damaged in the accident. After the settlement, the plaintiff paid $525 for services in adjusting the loss and $1000 for legal services rendered in effecting settlement.

The plaintiff then sued the defendant. This court set aside a judgment by the lower court for the plaintiff and ordered a new trial because of error in pleading and in procedural aspects of the case.

*Alderman* v. *Hanover Ins. Group,* 155 Conn. 585, 236 A.2d 462. At the second trial, from which this appeal was taken, there was a judgment for the plaintiff in the amount of $8150.83. In its appeal, the defendant contends that the lower court erred (1) in concluding that recovery from the insurer was not barred by exclusions in the policy, and (2) in holding that the plaintiff could recover the expense of adjusting and legal services incurred in settling the Center's claim before suit was brought.

## I

The insurance policy contained the following provision: "This policy does not apply . . . to injury to or destruction of . . . property owned or occupied by or rented to the insured, or . . . property used by the insured, or . . . property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control . . . ." The dispute concerning the application of this exclusion centers on the meaning of the terms "control" and "use." This court has defined "control" as "the power or authority to manage, superintend, direct or oversee." *Panaroni* v. *Johnson,* 158 Conn. 92, 98, 256 A.2d 246. The plaintiff had no such power and authority over the damaged building. Several employees of the Center were always working in and around the building, and the Center stationed a fire watcher in the building at all times that the plaintiff's workmen were working inside. Each morning, the plaintiff's employees were required to wait for a Center employee to arrive before they would begin their work inside the building.

Several courts have construed the phrase "care, custody, or control of the insured." Note, 62

A.L.R.2d 1242. The rule is to distinguish two situations: that in which "the property damaged is merely incidental to the property upon which the work is being performed by the insured," and that in which "the property damaged is under the supervision of the insured and is a necessary element of the work involved." *International Derrick & Equipment Co.* v. *Buxbaum,* 240 F.2d 536, 538 (3d Cir.). It is only in the latter situation that the exclusion applies so that the insured cannot recover under the policy. During the three-week period prior to the day the damage occurred, the plaintiff's employees worked both in and around the boiler building. Their presence in the building was only incidental to their work on the items which they had contracted to remove.

The definition of "use" is closely akin to that of care, custody, and control. Couch on Insurance 2d § 44:529. In *Gulf Oil Corporation* v. *James E. Dean Marine Divers, Inc.,* 323 F. Sup. 679, 681 (E.D. La.), the court applied substantially the same test as that used in *Buxbaum,* supra, to determine if there has been "use." Under a widely recognized definition of the term, "an insured 'uses' property within the meaning of the exclusion clause only where he puts it to his own service or to the purpose for which it was ordinarily intended." *Boswell* v. *Travelers Indemnity Co.,* 38 N.J. Super. 599, 607, 120 A.2d 250. The damaged building was serving the needs of the Center. Its purpose was for use as a "boiler room." The plaintiff's workmen never employed it for that purpose.

There is no evidence to suggest that the plaintiff "owned," "occupied," or "rented" the damaged building, as those terms are commonly understood.

We agree with the conclusion of the trial court that this exclusion would not bar recovery by the plaintiff.

The second exclusion clause which is at issue in this appeal is as follows: "This policy does not apply . . . to injury to or destruction of any property arising out of . . . the collapse of or structural injury to any building or structure due . . . (b) to moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support thereof . . . ." The trial court concluded that the damaged building did not collapse nor did it suffer structural injury. We find it unnecessary to consider that determination.[1] Whatever the nature of the damage done, it must have been "due to" the activities set out in (b) above. The policy in question insured the plaintiff as an iron or steel scrap dealer, whose business normally included the removal of boilers and furnaces. At the Center, the plaintiff was to remove from the building various items, including the coal conveyor, an ash hopper, pulverizers, a boiler and burners refractory, all boiler trim except main steam lines and blowoff valves, and two return pumps. Clearly, none of these items, including the coal conveyor, is a "structural support"; nor can any one of them properly be considered a "structure." All of these items are pieces of equipment which the plaintiff had contracted to remove so that new boilers could be installed.

This court has considered the meaning of the term "structure" and examined cases from other jurisdictions which construe that term. *Hendryx Co.* v.

---

[1] Consequently, it is unnecessary to discuss the defendant's request for corrections of the finding relating to certain photographs of the damaged building.

*New Haven,* 104 Conn. 632, 639, 134 A. 77. In addition to buildings and certain other freestanding constructions, the term "structures" was held to include devices "which are not in any strict sense independent buildings, as, for example, bay windows, signs attached to the sides or roof of a building, passways, bridges or arches between buildings, all forms of structures in mines, billboards, platforms and staging." Id., 641. The coal conveyor was not freestanding and not weight bearing. Nor, however, was it an integral feature of the building, as a bay window or connecting bridge. The coal conveyor is best characterized as a piece of equipment and, even under the broad definition set out in *Hendryx,* cannot be considered a "structure." Therefore, this second exclusion clause which the defendant raises as a defense to liability also does not apply; and the damage which occurred is covered by the insurance policy.

## II

In addition to denying liability under the policy, the defendant assigns error in the award to the plaintiff for the costs of investigation, adjusting and legal services incurred in the settlement of the claim; but concedes that in the event coverage is found, the amounts paid in settlement and for temporary lighting to mitigate damages were proper.

Under the provisions of the policy,[2] the defendant-insurer agreed to defend the plaintiff-insured

---

[2] "II. Defense, Settlement, Supplementary Payments. With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the company shall: (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient . . . ."

against any suit seeking damages on account of alleged injury or destruction of property. Ordinarily, a third party claimant will institute suit against the insured and the insurer will be requested to defend; but if the insurer determines that the loss is not covered by the provisions of the policy, "[i]t could either refuse to defend or it could defend under a reservation of its right to contest coverage under the various avenues which would subsequently be open to it for that purpose." *Missionaries of the Company of Mary, Inc.* v. *Aetna Casualty & Surety Co.,* 155 Conn. 104, 113, 230 A.2d 21, cited in *Keithan* v. *Massachusetts Bonding & Ins. Co.,* 159 Conn. 128, 139, 267 A.2d 660. The duty to defend means "that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury 'covered' by the policy; it is the claim which determines the insurer's duty to defend." *Lee* v. *Aetna Casualty & Surety Co.,* 178 F.2d 750, 751 (2d Cir.).

In this case, the defendant made its own investigation of the claim and advised the plaintiff that the loss was not covered by the policy. Before the third party claimant instituted a suit, the plaintiff settled the claim, incurring costs of settlement which included engineering, investigation and legal fees. The ultimate question to be determined in this instance is whether the insured is entitled to recover expenses incurred in settlement of a claim, where the insurer has wrongfully denied coverage and settlement is made by the insured before any suit has been instituted against the insured by the claimant. We do not find, nor does the defendant cite, any decision in this jurisdiction which determines the precise issue involved in this litigation. We therefore look to the decisions of other jurisdictions.

We find sufficient and logical support for the well established rule in many jurisdictions that an insurer who denies liability under a policy is liable for the amount of a settlement made by the insured before suit is brought, where the claim against the insured is found to have been covered by the policy. *Walters* v. *American Ins. Co.*, 185 Cal. App. 2d 776, 785, 8 Cal. Rptr. 665; *Thomas W. Hooley & Sons* v. *Zurich General Accident & Liability Ins. Co.*, 235 La. 289, 300, 103 So. 2d 449; note, 67 A.L.R.2d 1086; 44 Am. Jur. 2d, Insurance, § 1547. Of course, the settlement must be reasonable and made by the insured in good faith. *Thompson Heating Corporation* v. *Hardware Indemnity Ins. Co.*, 74 Ohio App. 350, 354, 58 N.E.2d 809; 44 Am. Jur. 2d, Insurance, § 1547. In *American Fire & Casualty Co.* v. *Kaplan*, 183 A.2d 914 (D.C. Mun. App.), the court set out some of the reasons for its decision to allow recovery by the insured of the amount of a presuit settlement, stating (pp. 915–16): "We think Kaplan's [the insured's] step in honoring the claim against him cannot be characterized . . . so as to defeat his resultant claim against the insurer. He had an interest of his own to protect. He had both a moral and a legal obligation on which he had been threatened with suit. . . . Under the circumstances, requiring Kaplan to remain passive while suit was filed and judgment taken could serve no useful purpose; it would have been a gesture of futility, and would have fostered unnecessary litigation, with attendant delays and additional expenses." Clearly, this right of the insured to recover the amount of a reasonable, presuit settlement is severely limited if there is not a corresponding right to recover costs incurred in effecting that settlement.

It is widely held that where the insurer wrongfully refuses to defend a suit, the insurer is obligated to pay to the insured all the expenses that the insured incurs in defending the suit, including costs of investigation and legal fees. 44 Am. Jur. 2d, Insurance, § 1547. Where an insurer refuses to acknowledge any duty or obligation arising under the contract of insurance, the insured is in much the same position whether or not suit has actually been filed. He assumes the duties which the insurer had contracted to perform, and in doing so incurs the same type of expenses whether he defends against suit or negotiates a presuit settlement. Therefore, the fact that suit has not actually been instituted should not bar recovery of costs incurred in effecting a presuit settlement.

Where the insurer has breached the contract of insurance by his wrongful denial of liability, the insured is released from the covenant against settlement or interference and may effect a reasonable and prudent settlement of the claim. In this case, the defendant made no claim that the amount of the settlement was unreasonable, or that bad faith was shown. As held in *Walters* v. *American Ins. Co.*, supra, 786, the plaintiff's "present rights against defendant are based upon defendant's breach of the insurance contract and not upon provisions of such contract requiring defendant to pay any amounts for which plaintiff has become legally obligated."

We conclude that the defendant's unjustified breach entitled the plaintiff to recover the costs of investigation and legal fees incurred in the settlement of the claim against the plaintiff, in addition to the amount of the settlement.

There is no error.

In this opinion the other judges concurred.