[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
On November 6, 1992, plaintiff French Cleaners, Inc., a Connecticut corporation, sued defendant Aetna Surety 
Casualty Company ("Aetna") to recover damages it claims to have suffered as a result of Aetna's refusal to appear and defend it in a federal civil lawsuit previously filed and prosecuted against it by one Flaviana A. Javier, its former employee. Claiming that Aetna's actions constituted both a breach of its contract of insurance with Aetna and a breach of the covenant of good faith and fair dealing which was implicit in that contract, the plaintiff now seeks to recover the attorney's fees it paid and all other costs and expenses it incurred in mounting its own, ultimately successful defense to Ms. Javier's lawsuit.
In the first count of its Complaint, the plaintiff alleges that the defendant was bound to defend it against Ms. Javier's lawsuit because the claims therein presented were covered under the terms the insurance policy it purchased from Aetna on August 3, 1988. Complaint, Count I, ¶ 2. In that policy, claims the plaintiff, it is insured against liability arising out of the conduct of its business. Id., ¶ 3. In particular, it alleges that
 The insuring agreement in the policy applies to "personal injury only if caused by an offense: . . . arising out of the conduct of business." Personal injury, in turn, is defined as encompassing injury other than bodily injury and including injury arising out of the oral or written publication of material that CT Page 1657 disparages a person's . . . services.
Id., ¶ 4.
According to the Complaint,
 On April 21, 1989, during the period when the policy was in effect, Flaviana Javier filed a Complaint against [the plaintiff] in Federal District Court, alleging that her services as an employee had been disparaged.
Id., ¶ 5. Believing that that claim "was of the nature reasonably encompassed under the terms of [its] insurance agreement [with Aetna]," id., 96, the plaintiff "report[ed] such claim" to Aetna, id., ¶ 7, but was told on "September 28, 1989 that . . . [Aetna would] refus[e] to appear and defend [it] in response to th[at] claim[.]" Id., ¶ 9. As a result of Aetna's refusal to afford it a defense, in alleged violation of its obligations under the above-described insurance contract, the plaintiff claims that it incurred the fees and expenses for which it now seeks to recover damages. Id., ¶¶ 10-15.
The second count of the plaintiff's Complaint is identical to the first count in all respects but one. There, instead of characterizing the defendant's refusal to defend it as a breach of its contract of insurance, it claims that that very same conduct was a breach of the covenant of good faith and fair dealing which was implicit in that contract.
On January 21, 1993, the defendant answered the plaintiff's Complaint, inter alia, as follows: first, by denying that Ms. Javier's federal action involved claims "of the nature reasonably encompassed under the terms of the [subject] insurance agreement[;] Answer, pp. 2-3; and second, by asserting as its Fourth Special Defense that
 To the extent that plaintiff is referring to policy No. 7 X5 563870 WCA, the claims made by Flaviana Javier did not satisfy the definition CT Page 1658 of "personal injury" as set forth in said policy, and the injuries and losses claimed did not fall within the scope of coverage.
On July 19, 1994, with the express permission of this Court, the defendant moved for summary judgment on the following ground:
 Defendant claims that under the terms of the policy no coverage is afforded to the plaintiff. Therefore, there is no breach of contract, and no viable claim for bad faith.
As required by Practice Book § 378 et seq., the defendant supported its Motion with a Memorandum of Law and true copies of both the insurance policy here at issue and Ms. Javier's federal complaint. The plaintiff opposed the defendant's Motion with its own Memorandum in Opposition.
 I
To prevail on a motion for summary judgment, the moving party must persuade the Court that there is no genuine issue as to any material fact, and thus that it is entitled to judgment as a matter of law. Lees v. MiddlesexInsurance Co., 219 Conn. 644, 650 (1991). In deciding such a motion, the Court's sole task is to determine whether genuine issues of material fact exist, not to resolve those issues on the merits. Only if the evidence and other materials which are submitted with the motion leave no genuine doubt that one or more facts material to the outcome of the case have been established should summary judgment be ordered.
 II
The duty of an insurer to defend a lawsuit against its insured is measured by the allegations of the complaint.Missionaries of Co. of Mary, Inc. v. Aetna Casualty Surety Co., 155 Conn. 104, 110, 230 A.2d 21 (1967). "The duty to defend means `that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury "covered" by the policy; it is the CT Page 1659 claim which determines the insurer's duty to defend.'"Alderman v. Hanover Ins. Group, 169 Conn. 603, 610,363 A.2d 1102 (1975) quoting Lee v. Aetna Casualty SuretyCo., 178 F.2d 750, 751 (2d Cir. 1949). Conversely, if the complaint alleges a liability not covered by the insurance policy, the insurer is not required to defend. Hogel v.Hogel, 167 Conn. 572, 576, 356 A.2d 172 (1975).
 III
The parties agree that the insurance policy appended to the defendant's Memorandum of Law embodies the entire agreement between them for the insurance of the plaintiff's business activities in the relevant time frame, and that all facts material to Ms. Javier's claims against the plaintiff are fully set forth in Ms. Javier's federal complaint. They disagree, however, as to how the relevant policy language should be interpreted and applied to Ms. Javier's federal claims.
The policy made three specific types of coverage available to the plaintiff. "Coverage A" was for "bodily injury and property damage liability;" "Coverage B" was for "personal and advertising injury liability;" and "Coverage C" was for "medical payments." In this case, the plaintiff argues that the claims presented by Flaviana Javier were claims for "personal injury liability," within the meaning of Coverage B of its contract of insurance.
The relevant language of the policy is as follows:
1. Insuring Agreement
. . .
 b. This insurance applies to "personal injury" only if caused by an offense: (1) Committed in the "coverage territory" during the policy period; and (2) Arising out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you.
Policy, p. 4. "Personal injury," in turn, is defined as CT Page 1660 follows in Section VI of the Policy:
 10. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:
. . .
 d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services [. . .]
Under these provisions, the plaintiff contends that it was entitled to a defense against the claims presented by Ms. Javier in her lawsuit because, in the language of the contract, her claims "ar[ose] out of" the alleged "oral or written publications of material that . . . disparage[d her] . . . services" as an employee. For the following reasons, the Court disagrees
In her federal complaint ("F.C."), Ms. Javier alleged that she "is a non-white immigrant of asian/pacific (Filipino) descent," F.C. ¶ 1., who "was born in the Philippines on December 22, 1920." Id. Having been hired by French Cleaners, Inc. as a seamstress on January 7, 1984, she worked there until April 21, 1989, when she was discharged. Id., ¶ 3.
In her first claim for relief, Ms. Javier alleged, pursuant to 29 U.S.C. et seq., the Age Discrimination in Employment Act as amended (ADEA), that
 5. [French Cleaners] discriminated against [her] because of her age in that
 (a) [She] was discharged inspite (sic) of her qualification (sic), experience and satisfactory work performance;
 (b) after discharging [her], [French Cleaners] hired a younger person to CT Page 1661 replace [her];
 (c) employees younger than [her] were retained by [French Cleaners]; and
 (d) [She] was denied a one-week paid vacation out of the two-week paid vacation which she already earned as of the date of her discharge. Employees with at least 5 years of service who are younger than [she] were given two-week paid vacation.
As a result of the aforementioned conduct, Ms. Javier claims that she "sustain[ed] loss of employment together with loss of salary, benefits and privileges pertaining thereto." Id. ¶ 7.
So framed, this claim for relief was neither a defamation claim nor a claim which depended in any measure upon proof of defamatory conduct. The cause of action therein presented did not require proof of defamatory conduct, and accordingly, none was alleged. This, then, was not a claim of injury "arising out of" the "offense" of "[o]ral or written publication of material that . . . disparages a person's . . . services." It was therefore not covered by the plaintiff's contract of insurance with Aetna, and need not have been defended by Aetna as part of Ms. Javier's lawsuit.
A different question might have been presented if Ms. Javier had sought damages for injury to her professional reputation as a result of French Cleaners' allegedly discriminatory treatment of her on account of her age. In that event, the Court would have been required to consider not only whether defamatory conduct was alleged by Ms. Javier, but whether she could lawfully have recovered damages for such an injury in an age discrimination action under the ADEA. An "insurer is under an obligation to defend only if it could be held bound to indemnify the insured, assuming that the injured person proved the allegations of the complaint, regardless of the actual outcome of the case." 44 Am.Jur.2d § 1469 (1982). Here, however, no such assessment need be made, for Ms. Javier did not seek damages for injury to her professional CT Page 1662 reputation as a result of French Cleaners' allegedly discriminatory conduct. Thus, though federal case law makes it clear that compensatory relief for defamation is unavailable under the remedial enforcement scheme of the ADEA,[1] the Court need not rely on those authorities in deciding this case. See Venezia v. Scovill, Inc.,592 F. Sup. 3, 5 (S.D. Ohio 1983); Catlett v. Owens-Illinois,Inc., 454 F. Sup. 358 (W.D. Mo. 1978) (holding that "an analysis of the remedial enforcement scheme of the ADEA indicates that the monetary remedies available under the Act are contractual in nature, and do not authorize the recovery of tort damages.")
Here then, there is no genuine issue of material fact as to whether Aetna had any obligation under the subject contract to provide French Cleaners a defense to Ms. Javier's age discrimination claim. For the foregoing reasons, it had no such duty.
In Ms. Javier's second claim for relief, she alleged, pursuant to 42 U.S.C. § 1981, part of the Civil Rights Act of 1866, that
 10. [French Cleaners] intentionally discriminated against [her] because of her race in that
 (a) [She] was discharged inspite (sic) of her satisfactory work performance and of the fact that she is well qualified and experienced to handle the position from which she was discharged.
 (b) immediately after discharging the plaintiff, [French Cleaners] sought out and hired a less-experienced white applicant to replace [her]; and
 (c) white employees occupying similar positions as that of the plaintiff were not discharged.
As a result of the aforedescribed conduct, Ms. Javier claimed to have "sustained loss of employment, wages and CT Page 1663 fringe benefits and further suffered, as she still suffers, emotional pain, humiliation and mental anguish." F.C. ¶ 11.
This claim, like Ms. Javier's first claim for relief, was obviously not a defamation claim or a claim which involved allegations of defamatory conduct. The cause of action therein presented did not require proof of defamatory conduct, and accordingly, none was alleged. The injury therein described thus did not "aris[e] out of the "offense" of "[o]ral or written publication of material that . . . disparages a person's . . . services." Therefore, it was not covered by the plaintiff's contract of insurance with Aetna, and need not have been defended by Aetna when it was presented in Ms. Javier's lawsuit.
In this claim for relief, unlike her age discrimination claim, Ms. Javier sought damages for "emotional pain, humiliation and mental anguish." However, such putative consequences of French Cleaners' allegedly discriminatory conduct were not claimed in any way to have resulted from the oral or written publication of any material disparaging Ms. Javier's services. Nor can any allegation that such a publication occurred be implied from the nature of the damages alleged, for emotional pain, humiliation and mental anguish are types of injuries or losses for which compensatory damages are sought and awarded in a wide range of cases not involving defamation.See generally Wright Fitzgerald, Connecticut Law of Torts
§ 172.
Even, however, if an implied allegation of defamatory conduct could be read into Ms. Javier's race discrimination claim, Aetna can still not be found to have had a duty to defend French Cleaners against that claim, for it could never have been required to indemnify French Cleaners therefor. Simply stated,
 Damages for defamation are not recoverable under the Civil Rights Act because a defamed person has not been deprived of any rights, privileges or immunities secured to him by the Constitution or laws of the United States. CT Page 1664
Duff v. Sherlock, 432 F. Sup. 423, 429 (E. D. Pa. 1977);Morey v. Independent School Dist., 312 F. Sup. 1257 (D. Minn. 1969), aff'd, 429 F.2d 428 (8th Cir. 1970); Church v.Hamilton, 444 F.2d 105 (3d Cir. 1971).
In sum, there is nothing in Ms. Javier's second claim for relief to suggest that the injury for which recovery was sought therein "ar[ose] out of" an "offense" involving "[o]ral or written publication of material that . . . disparage[d Ms. Javier's] . . . services." Therefore, there is no genuine issue of material fact that Aetna had no contractual duty to defend French Cleaners against that claim.
Ms. Javier's third and final claim for relief invoked the District Court's pendent jurisdiction and sought damages for wrongful termination and breach of contract in accordance with the following allegations:
 13. By discharging [her] without just cause, defendant maliciously and intentionally caused [her] loss of employment and of the benefits and privileges pertaining thereto, in violation of the express public policy of the State of Connecticut against unfair employment practices as codified by Conn. Gen. Stat. Sections 46a-60 et seq. and as mandated by the common law of the State of Connecticut.
 14. By discharging [her] without just cause, [French Cleaners] maliciously and intentionally caused [her] loss of employment in breach of the employment contract with the plaintiff as expressed in the employee handbook issued by the defendant and the past pattern and practice of [French Cleaners] in dealing with its employees.
As relief for these alleged violations of her common-law CT Page 1665 and contractual rights, Ms. Javier sought compensatory damages, punitive damages, reasonable attorney's fees and costs. F.C. p. 6.
A simple reading of Ms. Javier's third claim for relief clearly establishes that that claim was not covered by French Cleaners' insurance policy with Aetna. Arising, as it did, "out of the same nucleus of operative facts as the First and Second claims for relief [,]" F.C. ¶ 12, the third claim did not add to the essential allegations of Ms. Javier's first two claims. Instead, it merely recharacterized the course of conduct described in the first two counts of her Complaint as a violation of rights arising under her contract of employment or, in the alternative, a violation of her common-law rights as an at-will employee.
Just as Ms. Javier's first two claims for relief were not claims for defamation or claims involving allegations of defamatory conduct, the third claim for relief involved no such claim. In fact, the causes of action therein presented — breach of contract and wrongful termination — do not require proof of any sort of publication, much less publication of material that disparages another person's services.
It is doubtless true that the wrongful termination of an employee may cause that employee great distress, and that such distress may well be enhanced by the publication of material concerning the termination which disparages the employee's services in the performance of her job. However, the allegations here presented make no such claim, either expressly or by necessary implication. Here, because French Cleaners' challenged conduct was merely the alleged act of wrongful termination itself, not the way in which such termination was or may have been publicized to anyone — inside or outside its own business, either at the time of termination or thereafter — Ms Javier's third claim for relief cannot fairly be understood as a claim for personal injury arising out of such publication.
In conclusion, the Court finds that there is no genuine issue of material fact that Aetna had no contractual duty to appear and defend French Cleaners in Ms. Javier's federal lawsuit. As the undisputed materials CT Page 1666 presented on this Motion leave no doubt that the claims presented by Ms. Javier were not covered by French Cleaners' policy of insurance, Aetna is entitled to summary judgment on both counts of French Cleaners' complaint.
Accordingly, the defendant's Motion for Summary Judgment is hereby granted.
Michael R. Sheldon Judge