[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
"In this era of mounting congestion at every level of the . . . courts, procedural devices capable of terminating litigation quickly and efficiently, and fairly, acquire increased CT Page 12838 significance. One of the most important of these mechanisms is the motion for summary judgment. . . ." S.E.C. v. ResearchAutomation Corp. , 585 F.2d 31, 32 (2d Cir. 1978). Before the court, is a motion for summary judgment on a contractual claim for indemnification brought by a lessee against its lessor.
The plaintiff, Ann Esposito, alleges in her complaint that on July 4, 1994 at about 11:00 a.m., she was a customer in the store of the defendant Toys "R" Us (Toys), a retail toy store located in a shopping center owned by Christopher Road Associates (Associates' in East Haven. The plaintiff alleges that Toys was the owner or lessee of the store and exercised or retained control of the premises. As the plaintiff exited the store, she walked along an adjacent sidewalk toward the parking lot which, she alleges, belonged to Toys. The plaintiff claims that she "stepped off a dangerously high curb and fell violently to the ground in [the] parking lot." She asserts that her injuries were caused by Toys' negligence.
The plaintiff brought her action against Toys in January, 1996. In April, 1996, Toys demanded that Associates provide counsel to appear and defend on behalf of Toys. The following month, Toys made a more formal demand that Associates defend toys, and indemnify and save it harmless from the plaintiff's lawsuit.
Toys then filed an apportionment complaint against Associates and Bradlees, Inc. (Bradlees),[1], pursuant to General Statutes § 52-102b.[2] Toys alleged that pursuant to a lease it had with Associates, the latter as landlord had "agreed to supervise, operate, manage, repair, replace and maintain all of the common areas so as to keep such areas at all times in a safe, good and functional condition," and that pursuant to the lease the sidewalks and parking areas where the plaintiff claimed to have been injured were, inter alia, among the common areas. Toys also asserted that under the lease, Associates had agreed to indemnify Toys and hold it harmless from any claims for personal injuries. Finally, Toys alleged that if the plaintiff had been injured as she had alleged in her complaint, her injuries had been caused by Associates' negligence. Subsequently, Toys also filed a cross-claim against Associates seeking common law and contractual indemnification.
Toys moves for summary judgment as to liability against Associates on the second count of its cross claim. Toys alleges CT Page 12839 that "the lease agreement in effect at the time of the alleged incident provided that . . . Associates must defend and indemnify Toys . . . for any injury or damage to person or property happening on the premises or on the sidewalks abutting the premises. The defendant seeks summary judgment because the language in the lease agreement is clear and unambiguous and there is no genuine issue of material fact that . . . Associates must indemnify Toys . . . against the plaintiff's claims.
"A motion for summary judgment should be granted only when the pleadings, affidavits and other proof show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Practice Book § 384; Strada v. Connecticut Newspapers, Inc., 193 Conn. 313,316-17, 477 A.2d 1005 (1984); Burns v. Hartford Hospital,192 Conn. 451, 455, 472 A.2d 1257 (1984). It should be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. Practice Book § 380. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible as evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Practice Book § 381. Summary judgment procedure, generally speaking, is an attempt to dispose of cases in a manner which is speedier and less expensive for all concerned than a full-dress trial. TownBank Trust Co. v. Benson, 176 Conn. 304, 307, 407 A.2d 971
(1978); United Oil Co. v. Urban Redevelopment Commission,158 Conn. 364, 375, 260 A.2d 596 (1969)." Orenstein v. OldBuckingham Corporation, 205 Conn. 572, 574-575, 534 A.2d 1172
(1987).
 I
Before addressing the merits of Toys' motion, the court must address the admissibility of evidence proferred by the plaintiff in opposition to the motion. The plaintiff has filed an affidavit of Tina Wholean, a person who took photographs of the sidewalk and curb appurtenant to Toys which depicts merchandise of Toys on display on the sidewalk area. The photographs are attached to the affidavit. Toys objected to the affidavit and its attachments. Practice Book § 381 provides: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forthsuch facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the CT Page 12840 matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto." (Emphasis added.)
"Ordinarily [a photograph] should be substantiated by testimony that it is a correct representation of the conditions it depicts, and in so far as it is properly so authenticated it becomes evidence of those conditions." Cagianello v. Hartford,135 Conn. 473, 475, 66 A.2d 88 (1949); see Dombrowski v.Hartford, 5 Conn. App. 431, 499 A.2d 431 (1985). First, the Wholean affidavit does not so state. Second, the photographs were taken nearly three years after the plaintiff sustained her injuries. While this circumstance would not necessarily preclude their admission into evidence if a proper foundation were laid; cf. Hall v. Burns, 213 Conn. 446, 457, 569 A.2d 10 (1990); here, there is no evidence that at the time the photographs were taken, Toys was subject to the lease terms. That is, when the photographs were taken, Toys could have been subject to another lease expressly giving it permission to display merchandise on the sidewalk adjacent to its store. Therefore, the relevance of the photographs has not been established. For these reasons, the photographs are not admissible.
 II
The lease between Toys and Associates has been properly authenticated by an officer of Toys, and all parties acknowledged during oral argument that this was the lease in effect on July 4, 1994. The lease identifies Associates as "Landlord" and Toys as "Tenant." Section 11.02 of the lease provides:
 Landlord covenants to indemnify and save Tenant harmless (except for loss or damage resulting from the negligence of Tenant, its agents or employees) from and against any and all claims, actions, damages, liability and expense, including reasonable attorneys' fees, in connection with loss of life, personal injury and/or damage to property arising from or out of any occurrence in or upon the Shopping Center or any part thereof, or occasioned wholly or in part by any act or omission of Landlord, its agents, contractors, employees, servants or licensees therein.
CT Page 12841
(Emphasis added.) The preliminary statement to the lease defines the entire complex owned by Associates as the "Shopping Center." None of the parties disputes that the plaintiff has asserted a "claim" for "personal injury" "arising from or out of any occurrence in or upon the Shopping Center or any part thereof. . . ." Rather, the issue framed by the arguments of Associates and the plaintiff is whether the plaintiff's injuries "result[ed] from the negligence of Tenant [Toys], its agents or employees." This issue turns on whether Toys controlled the place where the plaintiff was injured.
"Liability for an injury due to defective premises does not depend on title, but on possession and control. Corvo v.Waterbury, 141 Conn. 719, 725, 109 A.2d 869; Ziulkowski v.Kolodziej, 119 Conn. 230, 232, 175 A. 780." Farlow v. AndrewsCorp. , 154 Conn. 220, 225, 224 A.2d 546 (1966). "[P]ossession cannot be fairly construed as anything short of the exercise of dominion and control similar to and in substitution for that which ordinarily would be exerted by the owner in possession."Hancock v. Finch, 126 Conn. 121, 123, 9 A.2d 811 (1939). "Dominion" in this context is synonymous with control.Ballentine's Law Dictionary (1969), p. 370. Thus, imposition of liability for defective premises devolves into the issue of control over the portion of the premises upon which lies the alleged defective condition. Cieszynski v. Franklin Corp. ,25 Conn. Sup. 342, 345, 203 A.2d 676 (1964).
The Connecticut Supreme "[c]ourt has defined `control' as `the power or authority to manage, superintend, direct or oversee.'" Alderman v. Hanover Insurance Group, 169 Conn. 603,606, 363 A.2d 1102 (1975), quoting Panaroni v. Johnson,158 Conn. 92, 98, 256 A.2d 246 (1969). "Whether a landlord in such a case has reserved control of [an accessway] ordinarily can best be determined by the intent of the parties expressed in the terms of the lease." Martel v. Malone, 138 Conn. 385, 388-89,85 A.2d 246 (1951). "Unless it is definitely expressed in the lease, the circumstances of the particular case determine whether the lessor has reserved control of the premises or whether they were under the exclusive dominion of the tenant, and it becomes a question of fact and is a matter of intention in the light of all the significant and attendant facts which bear on the issue.Miller v. Mutual Mortgage Co., 112 Conn. 303, 305, 152 A. 154."Panaroni v. Johnson, supra, 158 Conn. 98. Where the language of a lease is clear and unambiguous, however, the question of contractual intent is a question of law for the court. WaterCT Page 12842 Way Properties v. Colt's Manufacturing Co., 230 Conn. 660, 667,646 A.2d 143 (1994).
There is no dispute between the parties that the "demised premises" under the lease between Associates and Toys is the ground floor of a certain building in the shopping center. Section 1.01 of the lease provides:
 Landlord does hereby demise unto tenant, and Tenant does hereby take from Landlord, for the term hereinafter provided and any extensions thereof, the demised Premises, together with . . . the non-exclusive right for use by Tenant, Tenant's employees, concessionaires, licensees, agents, customers and invitees of the parking areas, driveways . . . sidewalks and passageways . . . and other similar areas for common use by the tenants and occupants of the Shopping Center (unless exclusively reserved to another party as indicated thereon). . . .
Section 6.01 of that lease provides in relevant part:
 (a) Landlord hereby grants to Tenant, its successors and assigns, a non-exclusive easement and right of use appurtenant to and for the benefit of the Demised Premises, in and over the Common Areas hereafter defined for the purposes of ingress, egress, delivery and parking, for and during the Lease Term.
 "(b) The term `Common Areas' shall include without limitation the parking areas, lanes, drives, entrances, sidewalks, landscaped areas, lighting facilities and equipment located in the Shopping Center, intended for and available for the common use of all of the owners of land within the Shopping Center, their tenants, and business invitees of such owners and tenants.
 (c) The easement granted hereby shall be for the benefit of but not restricted solely to, Tenant, and Tenant may grant the benefit of such easement to its tenants or other occupants CT Page 12843 of the Demised Premises for the duration of such occupancy and to the customers, employees and business invitees of Tenant, its tenants or other occupants; but same is not intended nor shall it be construed as creating any right in or for the benefit of the public at large. (Emphasis added.)
There is no evidence as to whether the sidewalk and curb from which the plaintiff allegedly fell were part of the only means of access or egress from Toys' store. Since "[i]n deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Thompson andPeck, Inc. v. Division Drywall, Inc., 241 Conn. 370, 374,696 A.2d 326 (1997); the court must assume that this was the only means of access or egress from Toys. In such a circumstance, the applicable rule of law is that in the absence of some agreementto the contrary, the sidewalk and curb were, as a matter of law, included in Toys' leasehold and were under the lessee's control.Lewis v. Kasimer, 153 Conn. 13, 17, 211 A.2d 837 (1965);Bentley v. Dynarski, 150 Conn. 147, 151, 186 A.2d 791 (1962);Torre v. Derenzo, 143 Conn. 302, 306, 122 A.2d 25 (1956);Martel v. Malone, supra, 138 Conn. 389-390.
Section 6.02 of the lease provides:
 (a) Landlord shall not change or alter the location of curb cuts, roadways, access aisles and sidewalks or any other areas of the Common Areas as shown on the Site Plan without the prior written consent of Tenant.
 (b) Landlord shall not construct any barrier, building or other structure on the Common Areas outside the areas designated on the Site Plan as Permissible Building Area" without the prior written consent of Tenant.
 (c) The paved parking area within the Shopping Center shall be sufficient in size to maintain a minimum parking ratio of 5.5 parking spaces for every 1,000 square feet of floor area (excluding non-retail mezzanines) in the Shopping Center.
Section 6.03 (a) of the lease provides: CT Page 12844
 Landlord shall cause to be supervised or shall supervise, operate, manage, repair, replace and maintain all of the Common Areas so as to keep such areas at all times in a safe, sightly, good and functional condition clean and free from refuse and rubbish, to standards of comparable community shopping centers in the market area.
The lease elsewhere requires Toys to maintain liability insurance "against claims for bodily injury, death or property damage occurring on, in or about the Demised Premises. . . ."
In deciding a motion for summary judgment "[t]he test is whether a party would be entitled to a directed verdict on the same facts." Batick v. Seymour, 186 Conn. 632, 647,443 A.2d 471 (1982). A court may direct a verdict where there is only one conclusion that a jury could reasonably and rationally reach.Krawczyk v. Stingle, 208 Conn. 239, 244, 543 A.2d 733 (1988). The evidence here, viewed in a light most favorable to the plaintiff, is that the plaintiff fell on a common area of Associates' shopping center outside the premises demised to Toys but which provided the only area of access to and egress from Toys, and over which Toys and its patrons had a non-exclusive easement. Associates was required by its lease with Toys to "supervise, operate, manage, repair, replace and maintain" this common area and could not change or alter it without Toys' prior written consent. Does this rise to a level of a jury question as to whether Toys had control of this common area? In order to answer this question we must examine the lease between Toys and Associates. Martel v. Malone, supra, 138 Conn. 388-389; seeBeaney v. Carlson, 174 Ohio St. 409, 189 N.E.2d 880, 881
(1963).
It is "the majority position of American tribunals that a lessee of a business establishment within a shopping center is not liable for injuries sustained by a patron on a portion of the premises not included in the leasehold when a provision of the lease requires the lessor to maintain the area in question. See Annotation, Liability of Lessee of Particular Premises in Shopping Center for Injury to Patron from Condition on Portion of Premises Not Included in His Leasehold, 48 A.L.R.3d 1163 . . . [as supplemented]. . . . The rationale for the majority rule stems from the principle that liability should be assessed against the party having control of the premises." Durm v.CT Page 12845Heck's Inc., 401 S.E.2d 908, 910 (W.Va. 1991); see, e.g.,Garcia v. Arbern Realty Co., 89 App. Div.2d 616, 452 N.Y.S.2d 665
(1982); Leary v. Lawrence Sales Corporation, 442 Pa. 389,275 A.2d 32 (1971); Underhill v. Shactman, 337 Mass. 730, 733,151 N.E.2d 287 (1958); see also Morris v. Scottsdale Mall Partners,Ltd., 523 N.E.2d 457 (Ind.App. 1988); Hall v. Quivira SquareDevelopment Co., Inc., 9 Kan. App.2d 243, 675 P.2d 931 (1984), rev. den.; Beaney v. Carlson, supra, 189 N.E.2d 882-883 (1963).
The court finds this rule in harmony with Connecticut law. In Connecticut, the linchpin of premises liability is control.Alderman v. Hanover Insurance Group, 169 Conn. 603, 606,363 A.2d 1102 (1975). Connecticut case law recognizes that a lessor and lessee, as the contracting parties, may resolve this issue for themselves in the lease. See, e.g., Lewis v. Kasimer,153 Conn. 13, 17, 211 A.2d 837 (1965) ("in the absence of some agreement to the contrary, the steps, as an integral part of the premises, were, as a matter of law, included in the plaintiff's leasehold and were under the lessee's control, and the lessor was under no duty to repair them"); Torre v. Derenzo, supra,143 Conn. 306 ("in the absence of an express or implied agreement to the contrary, the lessee of an apartment such as the one involved in the case at bar acquires an exclusive right of occupancy and control of the apartment and, as incidental thereto, of the parts of the structure which form an integral part of the tenement");Martel v. Malone, supra, 138 Conn. 388-89 ("Whether a landlord in such a case has reserved control of a stairway ordinarily can best be determined by the intent of the parties as expressed in the terms of the lease").
That the lease characterizes Toys' rights in the common areas as a "nonexclusive right for use" or "nonexclusive easement"[3]
does not confer control on Toys. While the duty to maintain an easement is with the owner of the easement (also known as the dominant estate); Holt v. Wissinger, 145 Conn. 106, 112,139 A.2d 353 (1958); Early v. Hall, 89 Conn. 606, 611, 95 A. 2
(1915); the rule is otherwise where the owner of the servient estate has agreed to maintain the easement. Collom v. Holton,449 So.2d 1003, 1005 n. 1 (Fla.App. 1984); cf. Beaney v.Carlson, supra, 189 N.E.2d 881 (where lessor shopping center leased to tenant a storeroom "[t]ogether with the use of the delivery area and parking area in common with other tenants," lessor agreed to maintain the parking lot, and tenant agreed to keep adjacent sidewalk clear of ice and snow, tenant not in control of parking lot where injury caused by failure to erect CT Page 12846 barrier to keep automobiles from moving from parking lot onto sidewalk); Howe v. Kroger Co., Inc., 598 S.W.2d 929, 931
(Tex.Civ.App. 1980) (where lease provided that all "land not covered by buildings is . . . Common Area for the joint use of all tenants [and] customers" control was with lessor on whom lease imposed duty to maintain such areas). That the lease imposes on Toys the obligation for obtaining insurance against personal injuries or property damage occurring "in or about the Demised Premises" is not sufficient to raise a jury question as to the issue of control. Underhill v. Shactman, supra, 337 Mass. 733. Nor does Associates' covenant in the lease to "not change or alter the location of curb cuts, roadways, access aisles and sidewalks or any other areas of the Common Areas" confer on Toys "control" over any common area, "the power or authority to manage, superintend, direct or oversee.'" Alderman v. HanoverInsurance Group, supra, 169 Conn. 606; cf. Durm v. Heck's,Inc., supra, 401 S.E.2d 910-911 (that lease imposed duty on tenant to remove debris from sidewalk area did not shift control away from lessor who was required by lease to maintain and repair common area on which plaintiff slipped and fell); Underhill v.Schactman, supra, 337 Mass. 733 (tenant's right to supply extra parking attendants did not raise jury question as to control of parking area which lease required lessor to "maintain and take care of").
This court acknowledges that there is authority to the contrary in comment a to Restatement (Second), Torts § 360. Section 360 provides that a lessor is liable to lessees and their invitees for injuries caused by dangerous conditions on those premises over which the lessor retains control. Comment a to that section states: "The rule stated in this Section applies to subject the lessor to liability to third persons entering the land, irrespective of whether the lessee knows or does not know of the dangerous condition. The lessee may, for example, know that the common entrance to the apartment or office which he has leased has become dangerous for use because of the lessor's failure to maintain it in safe condition. His knowledge maysubject him to liability even to his own licensees, if he failsto warn them of the danger. It will not, however, relieve the lessor of liability for his negligence in permitting the entrance to become dangerous." (Emphasis added.) While not relying on this authority, the court in Jackson v. K-Mart Corporation,182 N.J. Super. 645, 442 A.2d 1087, 1090-91 (1981J, held "that when the operator of a commercial establishment enjoys the benefits of a sidewalk by permitting a substantial number of business CT Page 12847 invitees to use it as a route to and from his business premises, he must take reasonable measures to keep that sidewalk free of hazards. If the operator is a tenant, his liability is concurrent with that of the property owner." Apparently, this rule applies even when the lessor has contractually assumed an exclusive obligation to maintain the sidewalk.
Neither the portion of comment a to Restatement (Second), Torts § 360, italicized supra, nor the ingress/egress rule ofJackson v. K-Mart Corporation, supra, 442 A.2d 1090-91, has been adopted in Connecticut. "`[I]t is the function of trial courts to follow the established law and leave to the Supreme Court . . . of Connecticut or the legislature any sweeping innovations therein if such are desirable from the standpoint of the present era.' Murphy v. Ives, 24 Conn. Sup. 158, 160
[188 A.2d 68 (1963)]." Waskiewicz v. Waskiewicz, 30 Conn. Sup. 111,112, 303 A.2d 28 (1972).
This court holds that "where a lease agreement clearly sets forth that the lessor has the duty to maintain non-leased areas, thereby retaining the lessor's control over such areas, the lessee of a store located in a shopping center is not liable when a patron sustains injuries as a result of an accident which occurs on the non-leased common area." Durm v. Heck's Inc., supra 401 S.E.2d 911.
Since Associates, in its lease, retained control over the common area where the plaintiff's accident occurred and had the duty to maintain that area whereas Toys had no such duty or control over the subject area, Toys' motion for summary judgment on the second count of its cross claim against Associates is granted as to liability.
BY THE COURT
Bruce L. LevinJudge of the Superior Court