[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
This is an unusual case in which a passenger in one car is claiming uninsured motorist benefits as a result of being shot by an operator or passenger in another car. The latter fired his gun in a northerly direction but one bullet went southerly "accidentally" striking the plaintiff.
 FACTS
On July 20, 1998, at approximately 12:55 a.m., the plaintiff was a passenger in a 1995 Dodge automobile which was stopped near the southerly side of Elliott Street in an easterly direction at or near its intersection with Wethersfield Avenue in the City of Hartford. Another automobile driving also in an easterly direction on Elliott Street came to a stop at or near the same intersection to the left of the automobile in which the plaintiff was a passenger. The operator or passenger fired gun shots in a generally northerly direction, but one shot accidentally went in a southerly direction striking the plaintiff in the left side of his head. At said time and place the plaintiff was covered by an automobile insurance policy issued by the defendant for both liability and uninsured motorist coverage. The driver of the other vehicle left the scene and neither the vehicle nor its occupants have been identified. For the purposes of defendant's Motion for Summary Judgment, the parties have agreed that the other vehicle was an uninsured motor vehicle.
It is well settled law that "It is the function of the Court to construe the provisions of the contract of insurance." O'Brien v. UnitedStates Fidelity Guaranty Co., 235 Conn. 837, 842 (1996).
 STANDARD OF REVIEW
"A trial court may appropriately render summary judgment when the documents submitted demonstrate that there is no genuine issue of material fact remaining between the parties and that the moving party is entitled to judgment as a matter of law." Burns v. Hartford Hospital,192 Conn. 451, 455, 472 A.2d 1257 (1984); Bartha v. Waterbury HouseWrecking Co., 190 Conn. 8, 11, 459 A.2d 115 (1983).
A party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact. Dougherty v. Graham,161 Conn. 248, 250, 287 A.2d 382 (1971). To satisfy this burden, the movant must make a showing that it is quite clear what the truth is and that there is no doubt as to the existence of a genuine issue of material fact. Plouffe v. New York, N.H H.R. Co., 160 Conn. 482, 488, 280 A.2d 359
(1971). The test that has been stated is: "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party CT Page 6989 would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) Cummings Lockwood v. Gray, 26 Conn. App. 293,296-97, 600 A.2d 1040 (1991).
 ISSUES
1. Was the shooting accidental?
It is logical to conclude that if the shooter was shooting at someone to the north and a bullet ended up going south, the bullet traveling south was accidental as to the plaintiff even though it was an intentional tort in shooting to the north.
 2. Was the gunshot wound a result of the ownership, maintenance or use of a motor vehicle?
The subject policy provides as to uninsured motorist coverage, the following, inter alia:
 "The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of an uninsured motor vehicle."
Defense counsel states that to his knowledge no court. has squarely addressed this issue before. However, he cites Edelman v. PacificEmployers Insurance Company, et al, 53 Conn. App. 54, 56, 61, 728 A.2d 531
(1999). In Edelman, the court dealt with an intentional assault by the owner of the Inn at Falls Village, an individual by the name of Hibbits. Hibbits had become intoxicated and assaulted his wife who subsequently called the State Police. During the difficult arrest of Hibbits, Hibbits assaulted the state troopers, and Hibbits kicked the plaintiff, one of the state troopers, twice in the head in rapid succession and with great force. The insurance policy in question provided coverage for injuries resulting from the "conduct of the business". The Appellate Court decided that there was no duty to defend for such a claim as the assault of the plaintiff was not an ordinary, intended use of the premises and citedAlderman v. Hanover Ins. Group, 169 Conn. 603, 607, 363 A.2d 1102 (1975). "Our Supreme Court in Alderman v. Hanover Ins. Group, 169 Conn. 603, 607,363 A.2d 1102 (1975) employed a widely recognized definition of the word `use' to determine that the plaintiff in that case had not used a certain piece of property for purposes of a policy's exclusions. The court found that an insured `uses' property only where he puts it to his own service or to the purpose for which it was ordinarily intended." Id. The court inEdelman concluded that "Hibbits' assault of the plaintiff while he resisted arrested was not an ordinarily intended use of that part of the inn's premises leased to him." CT Page 6990
In the case at bar, this Court concludes that driving an automobile for the purpose of a drive by shooting is not a use for which the automobile was ordinarily intended.
Plaintiff claims in his original brief dated March 15, 2000 that "The act of moving the uninsured motor vehicle into a position where it could be used to fire shots towards another vehicle one of which hit the plaintiff occurred in the use and operation of an uninsured motor vehicle." Apparently, he is arguing that driving the vehicle to the location was the ordinary use of the vehicle and the shooting was part of that act. However, there is no evidence as to whether the operator/owner of the motor vehicle knew or did not know the shooting would take place. In his complaint, the plaintiff describes the shooting as being done by the operator or passenger. The vehicle was facing in an easterly direction and the shots were fired in a northerly direction with the unknown vehicle being northerly of the vehicle in which the plaintiff was a passenger. It is a mystery as to how firing north could have resulted in a bullet going south.[1] However, if the firing was to the north, the more logical perpetrator was the driver who was on the northerly side of the vehicle. Of course, if the passenger was sitting behind the driver, he could just as easily have been the perpetrator. It is apparent from the facts before the Court that it is unknown as to who fired the gun.
The Court rejects plaintiff's argument because it is clear from the undisputed facts that it was not the vehicle that caused the accident. It was the firing of the gun that caused the accident. The driving of the vehicle and the firing of the gun were separate acts.
Plaintiff then amended his complaint by date of April 24, 2000, to allege in Paragraph 6 that "At said time and place, the unknown passenger of said other automobile was acting as the agent of the operator of said other automobile within the scope of his authority." Then, the plaintiff, in his brief states that the passenger was an agent of the owner/operator because said operator knew or should have known of his passenger's propensity to commit violent acts and knew or should have known that said passenger was in possession of a loaded gun, and he was negligent by permitting said passenger to enter into his motor vehicle. In addition said operator knew or should have known that said passenger was about to commit violent acts and that he was negligent by permitting said passenger to enter into his motor vehicle. As for agency, the brief states "said operator was in control of the passenger and did consent to the acts of said passenger in that he knew or should have known that the passenger was going to commit a violent act while riding in said motor vehicle. No factual basis has been offered by the plaintiff to support CT Page 6991 these allegations, namely that the operator knew or should have known that the passenger had violent tendencies and had a gun on his person. The plaintiff has also offered no evidence that the operator was in control of the passenger. To further complicate this issue is the fact that the plaintiff does not know who fired the shots. In Paragraph 5 of the Amended Complaint the following is stated:
 "At said time and place, the operator or passenger
of said other automobile fired some gunshots . . ."
It is clear that the plaintiff doesn't know whether it was the operator or the passenger who fired the shots. Therefore, the agency theory is not supported by any facts offered by the plaintiff who has a duty in a motion for summary judgment to offer an affidavit and/or other evidence to support his legal conclusions. In opposing a motion for summary judgment, the plaintiff must "provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact" not merely rely on unsubstantiated allegations. Thompson Peck, Inc. v. DivisionDrywall, 241 Conn. 370, 374 696 A.2d 326 (1997).[2]
Finally, as the defendant points out, this case rests on the interpretation of the insurance contract. "The [i]nterpretation of an insurance policy, like the interpretation of other written contracts, involves the determination of the intent of the parties as expressed by the language of the policy." (Emphasis added.) Springdale Donuts, Inc. v.Aetna Casualty Surety Co. of Illinois, 247 Conn. 801, 805 (1999). "Where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." Thompson Peck, Inc. v. Harbor Marine Contracting Corporation,203 Conn. 123, 131 (1987)."
As to the language of the contract, the contract states under "PART B.UNINSURED AND UNDERINSURED MOTORIST COVERAGE" the following, inter alia, in referring to the uninsured motor vehicle: "The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of an uninsured motor vehicle." The Court finds that this language is clear and unambiguous. This Court finds that language to mean damages caused by the ownership, maintenance or use of the vehicle, and this language was never intended to have the insured covered for other than an automobile accident. This is an automobile liability policy with uninsured motorist coverage. The intent from the language itself is that it was to cover the insured for damages caused by an uninsured vehicle not by someone in the vehicle shooting a gun.
Further, in the definition of uninsured motor vehicle. Paragraph 2 recites ". . . a land motor vehicle . . . which is a hit and run vehicle
CT Page 6992 whose operator or owner cannot be identified that hits or causes an accident involving:" and then goes on to describe covered parties which certainly includes the plaintiff. The operative word in Paragraph 2 is that it must be the vehicle that hits or causes an accident . . . whose operator or owner cannot be identified." It is the vehicle, not the person, that hits or causes an accident. Here, the vehicle did not cause the accident. It was an individual, either the operator or the passenger, who caused the accident. Further, the vehicle is described as a hit and run vehicle which would indicate a vehicle that crashes into or collides with the insured's vehicle. This Court cannot believe that the legislature intended that uninsured motorist coverage was to cover a situation in which the insured was injured by a pistol shooting emanating from the uninsured vehicle. The Court is unaware of any legislative history, and none has been provided by either party, that would indicate such an intent. As stated previously, the actions were separate. The driving to the scene and the firing of the gun were separate. The operator or owner of the vehicle would not be held liable under a liability policy if there was one, and absent the vehicle causing the accident, there is no coverage under the uninsured motorist provision. When asked by the Court whether the plaintiff could collect on the other vehicle's liability policy if one existed, plaintiff's attorney answered: "Probably not."
The Court is well aware of the language directly under paragraph 2.c. which states:
 "If there is no physical contact with the vehicle causing the accident, the covered person must prove by a fair preponderance of the evidence that the injuries resulted from the negligence of an unidentified motorist".
Again it refers to the vehicle causing the accident. The Court does not believe this sentence applies in this particular case for the reasons stated above in interpreting the other provisions of the contract. Once a determination is made that the contract requires that the vehicle caused the accident and that the firing of a gun from the vehicle is a separate and distinct act, the only logical conclusion is that there is no uninsured motorist coverage under the facts of this case.
Accordingly, summary judgment is entered in favor of the defendant on its motion dated March 8, 2000.[3]
Rittenband, J.T.R.